E. J. LOUIS, Appellee, v. ANDERS HANSEN et al., Appellants.

MAY 8, 1928.

*Ralph Maclean* and *J. A. Graham*, for appellants.

*Charles Bagley* and *Charles S. White*, for appellee.

EVANS, J.—Plaintiff's mortgage was executed in 1925, and covered the certain real estate owned by the defendants Hansen. Foreclosure thereof was begun by plaintiff on January 26,  1927. A receiver was prayed for, as provided in the mortgage. The chattel mortgage of the defendants Doonan was executed in November, 1926, and purported to cover all the crops to be grown by the mortgagor Hansen upon the land in question during the year 1927. Decree of foreclosure was entered in March, 1927, and an execution sale was had, which resulted in a deficiency judgment of $750. The decree appointed a receiver, who took possession of the land. The chattel mortgage being prior in date, the question presented is whether such priority of date was effective to establish a superiority of right in the chattel mortgagee, as against the plaintiff under his receivership clause.

The case carries us into a somewhat difficult field, where lines of demarcation are not easily drawn. The cases which have been presented to us have, in the main, involved controversies between a foreclosing plaintiff, under his receivership clause, and three classes of persons: (1) a tenant in occupancy in good faith for the ensuing year of the foreclosure; (2) an assignee in good faith of a lease and of the rents to accrue thereunder; (3) a chattel mortgagee. We have held definitely that a receivership clause becomes effective only after the commencement of the foreclosure action, and as an incident thereto. The general scope of the receivership clause is to entitle the mortgagee to take possession of the land and to utilize it during the year of redemption. The right to the growing crops is in-

cidental to the right of possession, and is in the nature of usufruct. In this field, a tenant occupying in good faith has been deemed to have stronger equities than the plaintiff, under his receivership clause, and his tenancy has accordingly been protected against the operation thereof. *Smith v. Cushatt*, 199 Iowa 690. For reasons somewhat analogous, a good-faith assignee of the rents to accrue from the tenant has been likewise protected. *Hatcher v. Forbes*, 202 Iowa 64; *Whiteside v. Morris*, 197 Iowa 211; *Keokuk Tr. Co. v. Campbell*, 205 Iowa 414. See, also, *Hakes v. North*, 199 Iowa 995. On the other hand, we have held that even a tenant is not entitled to superiority over the receivership clause of a real estate mortgage, if he becomes such tenant under a lease executed pending foreclosure proceedings. *Sheakley v. Mechler*, 199 Iowa 1390.

The reasons which underlie the rights of a tenant in occupancy are not necessarily applicable to a chattel mortgagee. A contract of lease carries the right of possession to the lessee for the purpose of the tenancy. To such right of possession we award superiority over the right of possession provided for in the receivership clause of a real estate mortgage. This legal right is strongly supported by practical and equitable considerations which tend to the utilization of the land and to the avoidance of waste. If land is to be utilized at all during the cropping season, arrangement and preparation therefor must ordinarily be made months in advance of the season. Without such preparation, the utilization of the land becomes impracticable, and it must lie waste for the season. No litigant can gain any benefit from such result. It is to the common interest of all that utilization be had. A tenant is often the only means of such utilization. His right to the renter's share of the crops is supported by strong equitable principles. He gives *quid pro quo*. He takes nothing which he does not himself produce out of the land. Without his service, there would be no subject-matter for the litigation.

Analogous and somewhat incidental to the proper protection of the tenant is the protection of the assignee of the rent due from him. The tenant is liable for such rent, as upon a promise to pay.

But the question now before us is whether, for like or analogous reasons, a mere mortgagee is to be put in the same cate-

gory as the tenant. The question goes to the very nature of the lien or right which accrues to the mortgagee under such mortgage. A chattel mortgage upon future crops carries *ab initio* an inherent infirmity which, of itself, may wholly frustrate the purposes of the mortgage. The chattel mortgage under consideration purported to cover future crops to be grown on the particular land during the year 1927 *by the mortgagor.* Such a form of mortgage has long been held valid; not, however, in the present tense, but as a future potentiality. Its effectiveness is not guaranteed by its legal validity. This case case turns upon the question of its *effectiveness,* and not upon that of its *validity.* No present lien could attach when the mortgage was made. No future lien could attach until the property described therein should come into being. The mortgage purported to cover only such crops as should be raised on this land *by this mortgagor.* For want of a better term, the lien of such a mortgage, pending the creation of the subject-matter, has been denominated a *potential* lien. Whatever the nature or extent of the lien, it could attach to chattels only. It was in no sense a lien upon the real estate. It carried no right of possession of the real estate. It imposed no impediment to the sale or lease of the real estate by the mortgagor. For the same reason, it could not be an impediment to any existing right of a mortgagee of the real estate to take possession thereof pending foreclosure proceeding. If, for any reason, the mortgagor had failed to raise or plant a crop for the year 1927, but had leased the ground to another, this, of itself, would defeat the effectiveness of the chattel mortgage, and would leave nothing upon which it could become a lien. This would be so, regardless of the receivership proviso in the real estate mortgage, and, indeed, regardless of any or all provisions of such real estate mortgage. The chattel mortgagee would fail, not simply because the rights of the plaintiff under his receivership proviso were superior to his rights, but because he himself had *no* rights, the subject-matter of his mortgage having failed to come into being. In this case, the decree of March, 1927, appointed a receiver. Pursuant thereto, the receiver took possession of the land, and in legal effect farmed it for that season. The appointment of the receiver and the taking possession of the land by him did not violate any legal right of the chattel mortgagee's. The result

was that the mortgagor raised no crop upon his land for the year 1927. The subject-matter of the chattel mortgagee's potential lien, therefore, never came into being. Such was our holding many years ago in *McMaster v. Emerson*, 109 Iowa 284. In that case, the mortgagor of the chattel mortgage on crops to be grown in the future, afterwards leased his land to a tenant, who raised a crop thereon. We held that the chattel mortgage was not a lien on the crop thus raised. We said:

"Before the mortgage attaches, the crops in one case, and the goods in the other, must come into existence and be acquired by the mortgagor. Unless so acquired, the mortgage never becomes a lien, since there is no interest of the mortgagor which he might have conveyed. As said by Mitchell, J., in a similar case, *Simmons v. Anderson*, 44 Minn. 487 (47 N. W. Rep. 52) * * * The chattel mortgage executed by the Newmans, not being a lien on their land, did not interfere with its sale or prevent them from leasing it. They did lease it to Emerson, receiving full payment, and he to Stacy. Under the circumstances, no one will say that the Newmans retained any interest whatever in the crops raised by Stacy. They never acquired, then, the property which they had previously mortgaged, and for this reason the mortgage never attached."

In that case we also quoted with approval from a Minnesota case, as follows:

"When a person takes a mortgage on property in being, he acquires only the interest which the mortgagor has in it; and if he, as in this case, takes a mortgage on the property not then in being, or owned by the mortgagor, it can attach only to such property as the mortgagor thereafter acquires. A chattel mortgage on crops to be thereafter grown gives the mortgagee no interest in, or lien upon, the land. It attaches as a lien only on the interest which the mortgagor may have in the crops when they come into being."

To the same effect, see *Dilenbeck v. Security Sav. Bank*, 186 Iowa 308.

The appellants cite *Hakes v. North*, 199 Iowa 995, in support of their contention. In that case, the foreclosure suit of the real estate mortgage was not brought until November, 1923. The plaintiff claimed the rents for 1923. The crops raised in 1923 were no longer a part of the land. We awarded them to

the assignee of the rents. In this connection, attention should be directed to an inaccurate remark made *arguendo* in *Hakes v. North* (page 998). In referring to the case of *First Nat. Bank v. Security Tr. & Sav. Bank*, 191 Iowa 842, we purported to state the holding therein, and failed to do so accurately. In that case, there had been no foreclosure of the real estate mortgage containing the receivership clause. The holder thereof was asserting a lien upon matured crops, under the receivership provisions of his real estate mortgage, notwithstanding that he had not begun a foreclosure suit. His claim to a lien was rejected. *Browne v. Willis*, 199 Iowa 453, is also cited by the appellants. We find nothing in this case that supports any contention of the appellants'. The question here under consideration was not involved in that case, except historically. That was an independent action brought by Browne, as assignee of a lease, against Willis, as tenant thereunder, to recover rent. He impleaded, as a defendant, Stewart, who was a receiver appointed in another action. One of the defenses pleaded was a prior adjudication in such former action. Such other action was a foreclosure suit, brought upon a real estate mortgage containing the receivership proviso. In such prior foreclosure suit, Willis and his landlord, Haltom, had been made parties defendant, and a decree had been entered therein, which worked an eviction of both. No appeal was taken from such decree, and it became a finality. This was the prior adjudication pleaded in the case of *Browne v. Willis*. We held it good as an adjudication, and conclusive on Browne, as well as upon Willis. In no other sense was the receivership question involved in that action.

The appellants urge upon our attention Section 10032, Code of 1924, which provides for an indexing in the chattel mortgage index of a real estate mortgage which contains chattel mortgage  provisions. The argument is that such statute was mandatory upon the foreclosing plaintiff, and that he failed to comply therewith; and that, therefore, the receivership provisions of his mortgage were not available to him. We have no occasion to consider this contention. If it were considered good as a legal contention, it would not avail to restore vitality to the appellants' chattel mortgage. They fail, not simply because their lien is inferior to that of the appellee, but because they

have no lien at all upon the subject-matter of the controversy. The potentiality of their contemplated lien never materialized. It died in embryo, by the failure of the mortgagor to raise a crop.

We reach the conclusion that the district court acted within the power of its discretion in appointing the receiver under the provisions of the mortgage and in permitting him to take possession of the real estate, and that such order invaded no legal right of the appellants' under their chattel mortgage. The decree is, accordingly,—*Affirmed.*

STEVENS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.

MORLING, KINDIG, and WAGNER, JJ., specially concur.

KINDIG, J. (specially concurring). I agree with the result reached by the majority in the above and foregoing opinion, but find myself impelled to disagree with part of the discussion adopted as a vehicle to carry them to their final conclusion.

It seems to me that the case can be disposed of by the use of long and well established principles laid down by this court, without entering new fields of thought or casting disparagement upon the theories embodied in our own pronouncements. Reference here is especially made to the fundamentals given as a distinction between: First, the rights of a tenant under a lease for the mortgaged premises, or those accruing to the vendee or pledgee of such lease, on the one hand; and second, the equities belonging to the holder of a chattel mortgage covering the crops or the interests arising in those products arising out of the receivership clause in the real estate mortgage, on the other. At this point, the majority say:

"The reasons which underlie the rights of a tenant in occupancy are not necessarily applicable to a chattel mortgagee. A contract of lease carries the right of possession to the lessee for the purpose of the tenancy. * * * This legal right is strongly supported by practical and equitable considerations which tend to the utilization of the land and to the avoidance of waste. * * * It is to the common interest of all that utilization be had. A tenant is often the only means of such utilization. His right to the renter's share of the crops is supported by strong equit-

able principles. He gives *quid pro quo.* He takes nothing which he does not himself produce out of the land.''

The reason for my disagreement with the opinion is because it adopts that philosophy and its associations as the primary basis for the dividing line between the legal relationships mentioned. This ground for the objection becomes more significant when the quoted sentences are connected with other statements and declarations in the opinion growing out of that major premise (that is, the quotation and its correlated thoughts). That the tenant earns his compensation under the lease is no doubt true, and it may be conceded that, in so doing, he protects, rather than injures, the position of others interested in the land; yet that is not the chief line of demarcation, but rather, an argument substantiating the soundness of the true test to be applied in determining this controversy. Elaboration will tend to elucidate. Therefore, quite essential is a review of some of the underlying and well fixed rules herebefore recognized and confirmed by us.

Whatever may be the title of the receiver to or his interest in the rent proceeds in the case at bar, those rights did not come into being until the foreclosure proceedings and the application for the appointment of said official agent. *Hatcher v. Forbes,* 202 Iowa 64; *Lynch v. Donahoe,* 205 Iowa 537; *Keokuk Tr. Co. v. Campbell,* 205 Iowa 414; *John Hancock Mut. Life Ins. Co. v. Linnan,* 205 Iowa 176; *Hakes v. North,* 199 Iowa 995. There can be added, in addition to the above, an avalanche of authorities to the same effect, many of which are set forth in the five citations. Quoting from *Hakes v. North,* supra, we find this language:

''We have held heretofore that such a provision [receivership clause] in a real estate mortgage * * * does not operate as a present lien upon the rents, profits, or growing crops of the mortgaged land. Such provision is a part of the remedy provided for the collection of the mortgage, and operates upon the personalty only upon and after the commencement of the foreclosure, and as a part of the procedure. * * * If, as we have held, the mortgage proviso [the receivership clause] under consideration created no lien *before* foreclosure, then it necessarily follows that it could have no retroactive effect *after* fore-

closure. Its operation must be prospective, and not retrospective.''

Significant phraseology in *Keokuk Tr. Co. v. Campbell,* supra, is as follows:

''A pledge of the right of possession is, in substance, a pledge of the rents and profits. *Walters v. Graham,* 190 Iowa 481. A pledge of the right of possession confers upon the mortgagee no greater rights than a pledge of the rents and profits. The pledge of the rents and profits contained in the mortgage does not come into operation as a lien,—a lien because thereof 'does not arise until action has been commenced to enforce collection of the debt.' * * * Up to the time suit is begun, the mortgagor is at liberty to lease the premises and to sell his right to the rents. Up to that time, the mortgagee, so far as the rents and profits are concerned, is merely a general creditor, without lien on them.''

More recently, we said, in *John Hancock Mut. Life Ins. Co. v. Linnan,* supra:

''The right of the mortgagor to freely sell and dispose of crops grown upon the mortgaged premises, or to assign the rent therefor at any time prior to the commencement of an action to foreclose the mortgage and for the appointment of a receiver, has been repeatedly sustained by this court * * * . The lien, we think, attached upon the commencement of the action to foreclose and for the appointment of a receiver, and not immediately upon the default of the mortgagor.''

In other words, at the time the real estate mortgage was executed, the rents and profits were not pledged, assigned, or conveyed in such a manner as to confer a present right thereto upon the mortgagee. Such mortgagee received thereby no right, title, or interest therein until: First, the mortgagor defaulted; and second, thereafter the holder of the mortgage instituted a proper proceeding for the appointment of a receiver,—and even then, not unless: First, the primary debtor was insolvent; and second, the incumbered premises were not of sufficient value to satisfy the lien. Said language of the real estate mortgage is an assignment or conveyance of the rents and profits upon a condition which must occur before effectiveness, and until that later contingency happens, the transfer of the rents and profits never becomes operative. And when ultimately the prerequisite

is met, the enabling clause of the mortgage takes effect,. not from the date of the instrument, but from the instant of commencing the suit and filing the application for the particular relief, and then only in the event the prayer is granted. As was said in *Hakes v. North,* supra:

"To say that the mortgagee may assert a seniority as of the date of his mortgage * * * is to say that [he] * * * had a lien upon such property all the time * * * . If, as we have held, the mortgage proviso under consideration created no lien *before* foreclosure, then it necessarily follows that it could have no retroactive effect *after* foreclosure."

To the same effect are *John Hancock Mut. Life Ins. Co. v. Linnan,* supra; *Lynch v. Donahoe,* supra; *Webber v. King,* 205 Iowa 612; *Kooistra v. Gibford,* 201 Iowa 275; *Rodgers v. Oliver,* 200 Iowa 869; *Whiteside v. Morris,* 197 Iowa 211; *First Nat. Bank v. Security Tr. & Sav. Bank,* 191 Iowa 842.

So, the theory upon which the tenant acquires his rights under a lease covering land burdened with a real estate mortgage is because, at the time of the execution of the demise contract, the real estate mortgagee had no interest or equity in the rents, crops, or profits, rather than, as suggested by the majority, due to the fact that no one was harmed thereby, and the tenant earned his income. Thus, the lessee and the landlord's assignee take the subject of their respective contracts for the reason that, at the time, the real estate mortgagee has no interest in or to the same; and when once acquired in that way, said lessee or assignee continues to hold the paramount title, because the additional security furnished the real estate mortgagee under the receivership clause, like any other protection of like nature when it comes into effect, is subject to that which is prior.

*Sheakley v. Mechler,* 199 Iowa 1390, is not inconsistent with this theory, but, in fact, is harmonious therewith; for in that case the lessee acquired his interests after the real estate mortgagee had obtained his through an application for the appointment of a receiver. The doctrine that sustains this special concurrence also makes correct the pronouncement in *Sheakley. v. Mechler,* supra. If, then, the real estate mortgagee in the present controversy had no rights in the rents, crops, or profits at the time the chattel mortgagee acquired his contract, why should the

former be permitted to say that the latter's agreement should not prevail in relation to the subject of this legal quarrel? I think it is superior, to the extent that it goes. Limitations therein, however, exist. And if the chattel mortgagee is to fail, it is because of the weakness of his own title, rather than the seniority of that belonging to the real estate mortgagee. Did the chattel mortgagee, when he made his agreement in 1926 for the 1927 crops, obtain any rights thereby? Manifestly he did, as against the real estate mortgagee, because that holder did not institute his proceedings for the appointment of a receiver until January 26, 1927. What interest did the chattel mortgagee thereby obtain? Not a lien on the crops, until they came into being. This may be conceded. *Wheeler v. Becker*, 68 Iowa 723.; *Luce v. Moorehead*, 73 Iowa 498; *Norris v. Hix*, 74 Iowa 524; *McMaster v. Emerson*, 109 Iowa 284. See, also, *First Nat. Bank v. Security Tr. & Sav. Bank*, supra; *Whiteside v. Morris*, supra; *Weyrauch v. Johnson*, 201 Iowa 1197.

Nevertheless, the chattel holder did, through that transaction, acquire something which, for want of a better name, can well be designated the assignment of the right to enjoy the potential lien until the actual materialized. During the interim of the potentiality some substantial right existed. See *Thompson Yards v. Richardson*, 51 N. D. 241 (199 N. W. 863). That must be true, or the entire principle of mortgaging future rents would fail. Our very system of priorities furnishes the foundation for this declaration. Even for the purpose of analogy, considering as assignees the holder of the chattel mortgage during the potential period and the owner of the real estate mortgage after the appointment of the receiver, but before the crops are planted, yet the chattel mortgagee is first, because, as between two assignees, the first in time has the prior equities. *Ottumwa Boiler Works v. O'Meara & Son*, 206 Iowa —.

How far, then, do the interests and rights of the chattel mortgagee extend? Clearly, to the crops which are to be grown by the mortgagor, and none other. *McMaster v. Emerson*, supra. But in the instant case, the mortgagor did not produce crops. Resultantly, there are none on which the chattel mortgage is a lien. Necessarily, then, the holder of that instrument must fail in this action, because his cause is predicated upon the assumption that there are crops covered by his chattel

mortgage. Such not being the case, there can be no recovery. Obviously, this was because of the absence of crops belonging to the chattel mortgagor, rather than due to any superior title or right in the receiver under the real estate mortgage over and above the chattel mortgage. As is apparent, the chattel mortgagee cannot enter the farm for the purpose of planting, cultivating, and raising the crops. Relief here is predicated entirely on the right of the lien, if any, afforded by the chattel mortgage. On the other hand, the real estate mortgagee, through the receiver, pledged not only the rents, crops, and profits to be produced by the landlord, the mortgagor, but any of such personalty to be brought forth on the land, so long as the rights of third persons are not concerned. Moreover, in addition thereto, he was armed with a method of collecting the same: to wit, the right to evict, enter, etc. (even though this amounted to no more than a pledging of the rents). See *Keokuk Tr. Co. v. Campbell*, supra. We said, with regard to this, in *Hakes v. North*, supra:

"Such provision [receivership clause] is a part of the remedy provided for the collection of the mortgage, and operates upon the personalty only upon and after the commencement of the foreclosure, and as a part of the procedure."

Logic compels the conclusion that the holder of the chattel mortgage in this case must fail, and the real estate mortgagee, through the receivership, prevail, not because of a superior title in the latter, but for the reason that there is entirely lacking any ownership in or lien held by the former. Upon this basis, I would affirm.

There is not before us any of the following questions: First, the chattel mortgagee's right to proceed against his mortgagor for failure to produce the crops; or, second, his right to sue the receiver or the real estate mortgagee for preventing the mortgagor from carrying out his contract with the chattel mortgagee; or, third, the right of the chattel mortgagee, on the proper occasion, to successfully contest with the real estate mortgagee the privilege of the latter to obtain a receiver to take possession of the land on which the dual mortgagor would, except for the eviction, raise crops, and thereby make actual the otherwise potential lien of the chattel mortgagee.

MORLING and WAGNER, JJ., join in this special concurrence.