Joseph Tretter v. Chicago Great Western Ry. Co., Appellant.

**Injury to growing crops:** MEASURE OF DAMAGES. The damage to growing crops where no injury to the land is claimed may be determined by estimating the damage to the crop directly, rather than indirectly by estimating the value of the land with the crops before and after the injury, by determining the value of the crop in the field, or on the market, with proper deductions for the cost of maturing and marketing of the same.

**Same:** INSTRUCTION: ASSUMPTION OF FACT. In this action the court instructed that recovery was sought for damage to growing crops and not to the land, and that in arriving at the amount of damage the jury should consider the cost of production up to the time of loss, the market value in the field or in the market place, and proximity to the market, and should consider all evidence of damage or loss and the opinion of witnesses as to the value of the crops and cost of production. *Held,* not objectionable as assuming a right of recovery, since there is no occasion for the jury to apply an instruction as to damages unless the other issues are found for the .plaintiff, as to which the jury was elsewhere instructed; nor was it objectionable as proceeding on the theory that all the crops were destroyed; nor because unsupported by evidence of the cost of production.

**Same:** MEASURE OF DAMAGES: INSTRUCTION. In an action to recover for injury to a growing crop the jury should be told whether plaintiff should be allowed the market value of the crop in the field or in the market place, and if in the market place whether deductions should be made for the cost of maturing and placing it upon the market, or whether such expense was to be eliminated. The instruction in this action is held to have been insufficient in these respects.

**Drainage of surface water:** OBSTRUCTION TO NATURAL FLOW. A railway company is bound to use ordinary care in filling a passage way for surface water, usually and naturally flowing under its tracks, so as not to unnecessarily dam up and throw the water back onto an adjoining land owner, thus causing him unnecessary inconvenience and damage.

**Growing crops:** EVIDENCE OF VALUE. In an action for damage to

crops evidence as to the value of the crop should be confined to such a crop as plaintiff had.

It is also held that an exclusion of a price list which gave the same prices for growing plants that plaintiff had testified to was not prejudicial.

*Appeal from Marshall District Court.*—Hon. J. M. Parker, Judge.

Friday, May 13, 1910.

Action for damages resulted in judgment against defendant, from which it appeals.—*Reversed.*

*Carr, Carr & Evans* and *Carney & Carney,* for appellant.

*Bradford & Johnson,* for appellee.

Ladd, J.—The two lots belonging to plaintiff and containing about five acres of land are bounded on the southeast by the right of way of the Chicago & Northwestern Railway Company, parallel with which and immediately beyond is the right of way of the Chicago Great Western Railway Company. These lots are lower than the land surrounding them, and the water gathering on them flows through a natural depression from the northwest to the southeast, passing therefrom beneath a bridge sixteen or eighteen feet long in the roadbed of the Chicago & Northwestern Railway Company, and prior to July, 1907, under a similar bridge in the roadbed of the Chicago Great Western Railway Company. About that time a car load of earth was dumped into the way beneath the latter bridge, obstructing the passage of water, to plaintiff's injury. Later on seven or eight gravel cars were emptied at the same place, filling the space beneath the bridge, and this so obstructed the passage of water that upon a

heavy fall of rain in the fore part of August the water was thrown back on plaintiff's land where it stood for several days, destroying about four hundred heads of cabbage, three hundred tomato plants, and about two thirds of thirteen thousand celery plants. The cabbages were mature. The clery appears to have been ready for bleaching, but whether this process is to be regarded as essential to maturity or merely as a preparation for market we are not advised. The tomato vines, though large, had no tomatoes on.

Recovery for the value of these, and not for injury to the land, was demanded. Their value in the field or else on the market with deductions of the reasonable cost of maturing and marketing was the correct measure of damages. *Blunck v. Railway,* 142 Iowa, 146. See, also, *Smith v. Railway,* 38 Iowa, 518, and *McMahon v. Dubuque,* 107 Iowa, 63. In *Drake v. Railway,* 63 Iowa, 302, relied on by appellant, permanent damages to the premises were claimed in connection with the loss of crop, and this accounts for the approval of a different rule in that case. The same is true of *Harvey v. Railway,* 129 Iowa, 465. Where damage to the crop only is claimed, and not to the soil, either because of injury to it in connection with a permanent or perennial growth thereon, there is no good reason for not estimating the damage to such crop directly, rather than indirectly, by estimating the values of land with it before and after the injury. Necessarily such difference is the difference between the values of the growing crops thereon before and after the injury, and the same result is reached. The circumstance that growing crops ordinarily are regarded as part of the realty is not controlling. These may be disposed of apart from the land (*Strawhacker v. Ives,* 114 Iowa, 661), and in measuring damages thereto the value of the land is not involved. The cause was tried on this theory, and the ob-

1. Injury to growing crops: measure of damages.

jections to the evidence because not presenting the proper measure of damages were rightly overruled.

II. It is contended, however, that, even though the measure of damages be as stated, the instructions did not so inform the jury. In the ninth instruction the court stated that the action was "to recover, not for damages done to his land, but for damage done to his celery, cabbage, and tomatoes." The tenth instruction may be set out: "In arriving at the amount you find the plaintiff entitled to recover, you should take into consideration the labor, care, and attention and expense you find he bestowed upon his celery, cabbage, and tomatoes up to the time of the loss; or, in other words, an element to be considered by you is the cost of production. You may consider the market value of said crop in the field or in the market place upon the streets and how near they were ready for the market in either place, or what further was necessary to be done to make them ready for the market in either place. The main thing is to take into consideration everything in the evidence that will aid you in arriving at a fair and just verdict. To whatever amount you find add interest at the rate of six percent from time of loss." This was all that was said bearing on the measure of damages, save a remark in the eleventh instruction "that, in ascertaining and fixing the amount of plaintiff's damage or loss, consider all the evidence upon that point, and also consider and weigh the opinion of witnesses who have testified as to the value of such crops and the cost of producing them." The criticisms of the instruction quoted are (1) that it assumes that plaintiff will recover; (2) it allows the cost of production, though no evidence thereof was introduced; (3) it allows recovery for market value without requiring deductions for cost of maturing and marketing; and (4) it proceeds on the theory that all the plants were destroyed. Taking these up separately, it is to be said of the first

2. Same: instruction: assumption of facts:

that there is no occasion for the jury to resort to an instruction on the measure of damages, unless the finding on the other issues is for the plaintiff. Only in that event is such an instruction made use of, and this is quite as manifest to the jury as to the court. Prior instructions had clearly stated that proof of specified allegations by a preponderance of the evidence was essential to plaintiff's recovery, and, in view of this, it is inconceivable that the jury could have inferred from the above that they were to find for plaintiff in any event. Consideration of the instructions as a whole obviates any such inference.

Next, it is said there was no evidence of the cost of production. This is not so. It appeared that plants were started from seed in a hothouse, and then transplanted. The value of plants before being transplanted was proven. One of defendant's witnesses testified to the cost of labor on an acre of celery up to the time of hilling and bleaching; and from then on, and it appeared that the plaintiff had about three-fourths of an acre in that crop. From this evidence the cost of production might have been inferred.

The fourth criticism is equally without foundation, but, as to the third, it must be conceded that no definite measure for damages was stated to the jury. Consideration of the cost of production as well as the market price in the field or in the market place, and cost of labor necessary yet to be done was authorized, but the purpose of so doing was not stated, and no intimation was given as to any rule by which the jury should be guided in determining the amount of damages to be awarded. Was plaintiff to be allowed the market value of the plants in the field or in the market place, and, if the latter, were deductions to be made of the reasonable cost of maturing the crop, preparing for and placing it on the market, or was such cost to be eliminated as plaintiff seems to have done in

3. SAME: measure of damages: instruction.

testifying for that in any event he would have done the work? On what theory did the jury proceed? The record leaves these inquiries unanswered, and the conclusion necessarily follows that there was error in omitting to instruct the jury the measure of damages to be awarded.

III.    Complaint is made of the charge of the court with reference to defendant's liability for obstructing the flow of surface water. The argument, in so far as based on the assumption that defendant's right of way was taken from plaintiff's land, requires no attention, as there is not the slightest warrant in the record for such assumption. The instruction proceeded on the theory that defendant in filling the passageway beneath the bridge and where surface water was wont to flow in the usual and natural way, according to the lay of the land, owed plaintiff the duty not to unnecessarily dam up and throw back said water, to the injury of neighboring landowners, but was bound to exercise ordinary care in what it did, so as not to occasion unnecessary inconvenience and damage to such owners. This is in harmony with the golden maxim of the law, that one must so use his own property as not to injure the rights of another, which also is the fundamental principle on which all the decisions of this state relating to surface water are based. In *Livingston v. McDonald,* 21 Iowa, 160, the right of each to do with his own as he pleases was recognized, but with the qualification that each should so use his own as not to injure his neighbor, and it was there said that "he can not make his estate more valuable by an act which unnecessarily renders his neighbor's less valuable." In *Willitts v. Railway,* 88 Iowa, 281, after referring to previous holdings, it was said to be the rule in this state that each proprietor in improving his land must do so in a careful and prudent manner so as to occasion no unnecessary inconvenience or damage to his neighbor, and in *Sullens v. Railway,*

4. DRAINAGE OF SURFACE WATER: obstruction to natural flow.

74 Iowa, 659, the rule was declared to be just, and that "the reasons for requiring that improvements on land be so made as to do no unnecessary injury to other lands apply with especial force to the construction of railways." See, also, *Wilson v. Duncan*, 74 Iowa, 491; *Wharton v. Stevens*, 84 Iowa, 107; *Matteson v. Tucker*, 131 Iowa, 511; *Hume v. City of Des Moines*, — Iowa, —. Undoubtedly there are cases to the contrary, but these are from states where the common-law rule prevails, though even in such states decisions are to be found announcing the doctrine above. The evidence without dispute disclosed that surface water after rainfalls usually flowed from the surrounding territory down several streets into that along plaintiff's land, and from there, as so collected on said street, onto plaintiff's land at one place, and then along a depression from the northeast corner to the opening under the bridges of the two railways. That the water after a rainfall gathered in a stream was the only inference to be drawn from the evidence and as such flowed through a depression or swale beneath the bridges, and there is no ground for the suggestion that the water was in a diffused state and not so gathered in a course or stream as to exact the duty of defendant in making the improvement to avoid unnecessary injury to plaintiff's crop.

IV. The ruling by which Ford was not permitted to testify to the value of a field of celery is approved on the ground that the limitation was not to such a crop of celery as plaintiff had. The price list offered in evidence gave the price of plants the same as testified by plaintiff, so that its exclusion was without prejudice, regardless of whether the proper foundation for its introduction had been laid.

5. GROWING CROPS: evidence of value.

We discover no error in the record save the omission to instruct on the measure of damages.—*Reversed.*