JOSEPH TRETTER, Appellee, v. CHICAGO & GREAT WESTERN RAILWAY COMPANY, Appellant.

**Damage to growing crops:** EVIDENCE. Where it is sought to recover damages to growing crops and the measure of damage is the injury to them while immature, evidence of such elements as may reasonably be presumed to affect their actual or market value is admissible; such as the cost of labor entering into their production. This is especially true where the court had established such ruling as the law of the case on a former appeal.

**Same:** MEASURE OF DAMAGES: INSTRUCTIONS. An instruction in this case that if plaintiff was entitled to a verdict he should recover the value of the matured crop at the nearest market, less the cost of further preparing and fitting it for market, was not objectionable in that it omitted the cost of marketing; for it would be commonly understood that cost of marketing is included in the cost of fitting growing crops for the market.

**Same:** EVIDENCE. An experienced market gardener may testify to the value of his growing produce, even though admitting his inability to state what such crops were worth if sold in the field; as ordinarily growing garden crops are not the subject of market value.

**Same:** VERDICT: SUFFICIENCY OF EVIDENCE. Assuming the credibility of the witnesses, which is a matter the appellate court will not pass upon, the verdict for plaintiff in this case has sufficient support in the evidence.

*Appeal from Marshall District Court.*—HON. J. M. PARKER, Judge.

FRIDAY, FEBRUARY 16, 1912.

Action at law to recover damages occasioned by the flooding of the plaintiff's market garden. Judgment for plaintiff, and defendant appeals. The material facts are stated in the opinion.—*Affirmed.*

*Carr, Carr & Evans* and *J. L. Carney,* for appellant.

*Bradford & Johnson,* for appellee. ·

Weaver, J.—The plaintiff owns certain lots in Marshalltown which he uses as a market garden, and upon which, at the time in question (August 15, 1907), he had planted and was bringing to maturity crops of cabbage, celery, and tomatoes, to be marketed in Marshalltown. Some of this produce was substantially matured, and the remainder still in a growing condition. The defendant's railway runs along or near the south side of the garden, and the natural drainage of the premises is to the south or southeast, down the course of a draw or swale. Prior to the summer of 1907, the defendant had maintained a bridge or opening at the crossing of said draw, thus affording escape for the drainage, until a short time before the injury complained of, when, as is alleged, defendant shortened the opening under said bridge, and still further obstructed said passage by ditching or dumping therein a car load of clay and other rubbish. It is further alleged that by reason of such obstructions in the course of said drainage the flood and surface waters were dammed up and set back over said garden to a considerable depth, injuring and destroying the crops growing therein, for all of which he asks to recover damages.

The defendant denies the charge of negligence on its part. It further pleads that since this action was begun the railway has been placed in the possession and control of receivers, by virtue of an order entered in the Circuit Court of the United States for the District of Minnesota,

and that plaintiff's claim should be filed in said receivership proceedings, and be no further prosecuted in the courts of this state. To this last plea, the trial court sustained a demurrer, to which ruling an exception was preserved.

The issue was tried to a jury, and verdict returned for plaintiff, assessing his damages at $490, and judgment being entered thereon the defendant appeals.

The case was before us on a former appeal (see *Tretter v. Railroad Co.*, 147 Iowa, 375), and a judgment for plaintiff reversed because of an error in the trial court's instruction on the measure of damages. The instructions given upon the same subject on the second trial are again challenged by the defendant.

In considering this feature of the case on the former trial, we recognized two rules for the measurement of damages for the destruction of growing crops, the application of either of which would produce substantially just results. The first measure thus recognized was the value of the immature crop in the field as it stood at the time of its alleged destruction; and, secondly, the market value of the product, had it been carried to maturity, less the reasonable cost in labor and expense required to mature and market it. By either rule, it was assumed that the resulting figure would represent "the difference between the values of the growing crop before and after the injury." As immature, growing crops are not commonly bought and sold, except as a part of the land, and may fairly be said to have no recognized market value, it is both reasonable and proper that, in applying the first rule, inquiry should be made into such facts or elements as may fairly be presumed to affect their actual or reasonable value. *Railroad Co. v. Wilson,* 46 Tex. Civ. App. 38, (101 S. W. 1042); *Harris v. Railroad Co.*, 3 Bosw. (N. Y.) 7, affirmed in 58 N. Y. 660; *Lachner v. Express Co.*, 72 Mo. App. 13; *Horres v. Berkeley Chemical Co.*, 57 S. C. 189, (35 S. E. 500, 52 L. R. A. 36).

1. DAMAGE TO GROWING CROPS: evidence.

Among such elements, that of the cost of producing the property or thing which is the subject of controversy is a pertinent matter of investigation. But, however this may be, as a general proposition, it was made the law of this case by the opinion on the first appeal. It was there said, "Consideration of the cost of production . . . and the cost of labor necessary yet to be done was authorized;" and, in so far as the court on second trial followed the doctrine thus stated, there was no reversible error. In the tenth and eleventh paragraphs of its charge, the court gave to the jury the two measures of damage to which we have adverted.

It is to be admitted that these propositions are not stated with the fullness or clearness which is desirable and the court failed to indicate, by a disjunctive word or other direct statement, that these rules were to be understood as alternatives, and that if one was applied by the jury the other should be disregarded; but such, we think, was the force and effect of the instructions when considered together, and assuming, as we must, that the jurors were men of average intelligence, understanding, and experience, we are disposed to think they must have so understood it. There was therefore no reversible error in this part of the charge.

In stating the last alternative rule, the jury were told that plaintiff, if entitled to a verdict, could recover the value of the matured crop in the nearest market, less the expense and labor incurred "in preparing and fitting it for the market." This is said to be erroneous, because it omits from consideration the cost of marketing; but this objection requires the application of a standard of verbal criticism entirely too exact for practical purposes, and if consistently followed few, if any, instructions, would stand the test of appeal. The cost of fitting a crop for the market may, in a narrow sense, be limited to the cost of putting it in the condition in which such products are usually bought and sold; but as here used,

2. SAME: measure of damages: instructions.

it is very clear the court was directing the jury that, after ascertaining the gross market value of the crop when matured, there should be deducted all the cost in labor and expense which would have been incurred in bringing, the crop to maturity and converting it into money at the nearest market, and this would of necessity include the cost of hauling and selling the produce. No other interpretation can fairly be placed on this instruction, and the jury could not have been misled by it.

Under our system of procedure, the court's instructions must be reduced to writing, and if trials are not to be unduly prolonged the preparation of these instructions must be attended to while the trial and the arguments of counsel are in progress, subject at every moment to the interruptions and distractions incident to maintaining an orderly course of judicial business and ruling upon the questions raised by counsel. Under such circumstances, it would be unreasonable to expect or demand that the court shall state rules of law with the technical exactness which we look for in the text-books, or the fineness of differentiation observed in judicial precedents. Indeed, such niceties of statement would tend to defeat the very purpose for which instructions are given. The jurors of to-day are not lawyers, and an excess of instruction is more apt to confuse than to enlighten their judgments; but, as a rule, they are men of intelligence, endowed with the "saving grace of common sense," and slight inaccuracies in the statement of a general rule of law are not likely to lead them astray, if the general tenor and effect of the court's charge be not clearly erroneous.

Some other instructions, by which exceptions are taken, were rather loosely drawn; but we find no reversible error in them. The issues were simple, the testimony was the subject of but little dispute, and the verdict was not in excess of damages which, under the evidence, might have been found against the defendant upon any of the theories advanced by counsel as to the true measure of damages. We

find nothing in the charge to the jury upon which we may properly order a third trial.

It is also argued that there was no evidence to justify certain instructions, or to show that labor and expense had been incurred in producing or maturing and marketing the crop. These points were substantially identical with those made upon a similar record on the former appeal, and were held not well taken. Even as an original proposition, we find the evidence sufficient to go to the jury on the several questions involved in the rulings and instructions.

The appellant further objects that plaintiff was not a competent witness to testify to the value of the growing crop, because he admitted his inability to state what such

3. Same: evidence.

immature crop was "worth as sold in the field." The witness was a market gardener of much experience, and showed himself clearly competent to speak concerning market values of such garden produce; but, as we have already suggested, half-grown garden crops in the field are ordinarily not the subject of market value. Such fact would not, however, render the witness incompetent to speak of their actual or reasonable value.

Finally, the damages awarded are said to be excessive. Assuming that the jury believed the witnesses, the verdict is readily sustainable. The credibility of testimony is not

4. Same: verdict: sufficiency of evidence.

a question upon which the court may pass. It is for the jury alone, and there is no such lack of support for its finding that we may rightfully set it aside. This case involves a comparatively small sum. It has been twice tried; each trial resulting in a verdict for plaintiff and an appeal by defendant. It is to the interest of the parties and of society that litigation be not unduly prolonged; and under such circumstances as are here presented the error which will justify a second reversal and third trial should be so clear as to fully demonstrate that a failure of justice will occur if this court does

not again interfere. The record before us is not of that character.

The judgment of the district court is therefore *affirmed*.