H. W. WHITESIDE, Appellee, v. R. E. MORRIS et al., Appellees;
COMMERCIAL SAVINGS BANK OF DES MOINES, Intervener,
Appellant.

MORTGAGES: Pledge of Rents—Subsequent Lease—Priority. The as-
1  signee of a real-estate lease providing for both cash and crop rent
holds a right superior to the right of the holder of a *prior* executed
real-estate mortgage containing a pledge of the rents, it appearing
that the assignment was taken in good faith, without notice, actual
or constructive, of said mortgage pledge; and in such case the
maturity or immaturity of the crops is quite immaterial.

MORTGAGES: Real-Estate Mortgage—Pledge of Rents—Constructive
2  Notice. A duly executed and recorded real-estate mortgage does
not impart constructive notice of a pledge of *rents* therein con-
tained, when it is not indexed as a chattel mortgage.

MORTGAGES: Real-Estate Mortgage—Pledge of Rents—When Lien
3  Attaches. A real-estate mortgage containing no pledge of the rents
except an authorization of the appointment of a receiver to take
charge of said rents in the event of a foreclosure, creates no lien on
such rents *until foreclosure is commenced and such receiver is ap-
pointed.*

*Appeal from Lucas District Court.*—SENECA CORNELL, Judge.

FEBRUARY 5, 1924.

THIS is an action to foreclose a real estate mortgage. The
controversy is over the rent for the mortgaged premises, repre-
sented in part by notes and in part by a share of the crop, be-
tween the plaintiff, claiming under the mortgage, and the in-
tervener, claiming under an assignment of the lease and notes.
From a decree in favor of plaintiff as to the crop, and in favor
of intervener as to the notes, intervener and plaintiff appeal.—
*Reversed on intervener's appeal; affirmed on plaintiff's appeal.*

*Lehmann, Seevers & Hurlburt,* for appellant.

*Stuart & Stuart, C. F. Wennerstrum,* and *Poston & Mur-
row,* for appellees.

VERMILION, J.—On March 1, 1920, the defendant R. E. Morris and wife executed a mortgage on certain real estate to secure their note for $7,000, due April 1, 1922, to the plaintiff and appellee, Whiteside. Thereafter, the defendant George Ammer became the owner of the land by a conveyance from one to whom Morris had conveyed it, and on March 31, 1922, acting by A. C. Capps as his agent, leased the land to the defendants Irwin Meyers and John J. Meyers by a written contract, for a term ending March 1, 1923, for a rental of $250, represented by two negotiable promissory notes of the lessees for $125 each, due respectively September 1st and January 1st following, and one half of all corn, oats, hay, and seed produced on the farm. On April 13, 1922, Ammer assigned his interest in the lease, and transferred the two rent notes to Capps for a valuable consideration, and on May 1, 1922, Capps assigned the lease and notes to the intervener bank as collateral security for a loan. On July 24, 1922, Whiteside filed his petition herein, alleging default in the payment of the $7,000 note, and asking judgment for the amount due thereon, a decree foreclosing the mortgage securing it, and the appointment of a receiver to take charge of and collect the rents arising from the land. On July 31, 1922, a receiver was appointed. The bank intervened, and claimed, by virtue of the assignment of the lease and notes from Ammer to Capps and Capps to it, to be a bona-fide holder of the notes and a purchaser of the landlord's share of the crop, without notice of appellant's claim under the mortgage. Upon a trial, the court below upheld intervener's claim to the notes, but found that the receiver was entitled to the landlord's share of the crop. From this order both intervener and the plaintiff appeal. The former, having first perfected its appeal, will be designated the appellant.

1. MORTGAGES: pledge of rents: subsequent lease: priority.

The appellee's mortgage was not filed or indexed as a chattel mortgage, and the record imparted no constructive notice that it covered the rents and profits arising from the mortgaged premises. *Trulock v. Donahue,* 76 Iowa 758. Chapter 246 of the Acts of the Thirty-Ninth General Assembly, while not in force at the date of the mortgage, is apparently intended to provide relief for such a situation. It is shown that neither Capps

2. MORTGAGES: real-estate mortgage: pledge of rents: constructive notice.

nor the appellant had any actual notice of the provision of the mortgage with reference to the rents and profits. So much, indeed, was found by the court below in sustaining appellant's claim to the notes; but as to the landlord's share of the crop it was held that the crops had not matured, and were in fact a part of the land at the time the mortgage debt matured and when the receiver was appointed; and for that reason the receiver's claim thereto was upheld.

It is, of course, true, as contended by appellee, that growing and immature crops are a part of the land, and pass under a conveyance of the land. But it is also true that the owner may, by his voluntary act, so far separate the growing crops from the soil as to pass title thereto, independent of his estate in the land. *Strawhacker v. Ives,* 114 Iowa 661. The assignment by Ammer to Capps of his, the landlord's, interest in the crop growing or to be grown upon the land was good as between the parties, as was the assignment from Capps to appellant. Being good as between the parties, they are good as against all persons except such as have a superior or paramount right thereto. *Lufkin v. Preston,* 52 Iowa 235 and 57 Iowa 28.

Aside from the fact that the record of appellee's mortgage did not operate to give constructive notice of any claim to the crops by virtue of the mortgage, it becomes material to inquire just what rights the mortgage gave to the crops grown on the premises. The only provision of the mortgage referring to the rents and profits of the mortgaged premises is the following:

3. MORTGAGES: real-estate mortgage: pledge of rents: when lien attaches.

"And if suit is brought to foreclose this mortgage hereby authorize the court to appoint a receiver, for the benefit of the mortgagee, of the rents issues and profits."

The rents and profits are in no other manner or respect pledged to the payment of the mortgage debt. While this provision doubtless amounted to a pledging of the rents and profits, they are pledged only in case and when suit is brought to foreclose the mortgage. The rights of the mortgagee thereto did not arise until such action was brought. *First Nat. Bank v. Security Tr. & Sav. Bank,* 191 Iowa 842, and authorities there cited. In the cited case, the question arose between the holder of two real estate mortgages, in which the rents and profits were

expressly pledged, and where a provision such as appears in the mortgage in suit was also found, and the holder of a subsequent chattel mortgage covering a one-half interest in all crops raised on the mortgaged premises. It was insisted that the former were prior liens on the crop. The court, in disposing of that contention, said:

"It is the law in this state, in harmony with the general holding, that the right of the holder of a mortgage upon real estate, pledging the rents and income as security to the defendant for the same, does not arise until action has been commenced to enforce collection of the debt."

Among other cases cited in support of the doctrine is that of *Swan v. Mitchell*, 82 Iowa 307, which is there quoted, to the following effect:

"The fact that 'tenements, hereditaments and appurtenances, and the rents, issues and profits,' were conveyed to the mortgagee must be construed with the defeasance of the instrument; and, where so construed, the instrument plainly provides that the rents and profits are only pledged in case possession is taken by the mortgagee."

It was held that the lien of the chattel mortgage was senior to the lien of the real estate mortgages.

Until the mortgagee has acted, and legally demanded the rents and profits, the mortgagor or his assignee may dispose of them as is desired, without being liable to account therefor to the mortgagee. *Galveston Railroad v. Cowdrey*, 11 Wall. (U. S.) 459 (20 L. Ed. 199); *Freedman's Sav. & Tr. Co. v. Shepherd*, 127 U. S. 494 (32 L. Ed. 163); *Bank of Woodland v. Christie* (Cal.), 62 Pac. 400; *Frank v. New York, L. E. & W. R. Co.*, 122 N. Y. 197 (25 N. E. 332); *New York Sec. & Tr. Co. v. Saratoga Gas & Elec. Lt. Co.*, 159 N. Y. 137 (53 N. E. 758, 45 L. R. A. 132); *Caldwell v. Alsop*, 48 Kan. 571 (29 Pac. 1150, 17 L. R. A. 782); *Simson v. Ferguson* (Cal.), 40 Pac. 104; *Sullivan v. Rosson*, 223 N. Y. 217 (119 N. E. 405, 4 A. L. R. 1400, and note).

In *Caldwell v. Alsop*, supra, the facts were very similar to those here involved. The mortgagor had sold the share of the crop of corn coming to him as landlord on April 15th, evidently before it was matured, and after default upon the mortgage, but

before commencement of foreclosure proceedings or the appointment of a receiver. While the fact is mentioned that, at the time the receiver was appointed, the crop had matured, that fact was not controlling, for it is said:

"The title to the land remained in the mortgagor, and his right to control and dispose of the annual crops remained in him, at least until the receiver obtained possession."

It is obvious that if, at the time the crop was disposed of by the mortgagor, a good title passed to the purchaser as against the mortgagee, the latter could not subsequently divest it by securing the appointment of a receiver before the crop matured. The maturity of the crop at the time the receiver takes possession may be material, in the absence of a transfer, as pointed out in the *Caldwell* case, upon the question whether it is a part of the land or chattel property; but where its status as chattels has been fixed by a prior severance from the land by a sale, it is not controlling.

The appellee acquired no lien by virtue of his mortgage upon the crops, the rents and profits of the mortgaged premises, until foreclosure proceedings were commenced and the receiver was appointed to take possession of them. Prior to that, Ammer, having a right so to do, had disposed of them by assignment to Capps. Appellee, at the time the receiver was appointed, did not stand in the situation of an existing creditor or subsequent purchaser, as to whom the assignment to Capps would not be valid without notice unless recorded, under Section 2906 of the Code, because Ammer had not been in actual possession of the crop, and did not retain actual possession of it after the assignment. *Lufkin v. Preston,* 57 Iowa 28, supra.

Upon plaintiff's appeal, it is urged that the bank is not an innocent purchaser of the notes, but came into possession of them through a fraudulent transaction with Capps. This contention, we are clear, cannot be sustained. On the contrary, the finding of the court below that the bank is a good-faith holder of the notes for a valuable consideration is fully supported by the evidence.

Upon intervener's appeal, the case is reversed, with direction to enter a decree in accordance with this opinion; and on

plaintiff's appeal, affirmed.—*Affirmed on plaintiff's appeal; reversed on intervener's appeal.*

Arthur, C. J., Stevens and De Graff, JJ., concur.