ROBERT EPPLING, appellee, v. JOHN SEUNTJENS, appellant.

No. 50741.

(Reported in 117 N.W.2d 820)

NOVEMBER 13, 1962.

Creasey & Metcalf, of Moville, for appellant.

William S. Sturges, of LeMars, for appellee.

GARFIELD, C. J.—This action is in equity for injunctive relief and money damages for claimed diversion of surface water by defendant Seuntjens onto plaintiff Eppling's adjoining farm land. Following trial plaintiff had judgment for $1681 mainly for damage to crops and pasture. No injunctive relief was granted. Defendant has appealed.

Plaintiff Eppling purchased his farm from John Killhorn in

1948 and took possession in March 1949. It is the north 200 acres of the east half of a certain section 10 in Plymouth County. Defendant Seuntjens purchased the west half of the section in 1940. The natural course of surface drainage on these lands is from the south of plaintiff's land northwest toward the west fork of the Little Sioux River which flows southwest across the west three fourths of the north one fourth of the section. The river crosses the north section line at about the middle of plaintiff's north line and crosses the dividing line between the two farms about 30 rods south of their north line. It leaves defendant's land about 30 rods south of his northwest 40-acre tract.

When plaintiff took possession of his farm in 1949 a meandering stream flowed northwest in this natural course of drainage from plaintiff's south line toward the dividing line between the two farms. It left plaintiff's west line about 15 rods south of his northwest 40-acre tract. Prior to 1945 the water from this stream spread out to the northwest over defendant's land before it reached the river. Defendant then employed Russell Bratt to build a ditch inside his east fence line from the place where the creek came from plaintiff's farm, thence north to the river. A dike four to six feet high was thrown up just west of this ditch. The ditch and dike were built so the water from plaintiff's land would flow north along the fence line rather than northwesterly over defendant's field. Mr. Killhorn, plaintiff's predecessor in title, knew the ditch and dike were being built inside defendant's east line and did not object thereto.

In the spring of 1946 Mr. Bratt and a subcontractor straightened the course of the river across the north end of the two farms and built a dike along it. Defendant and Killhorn each paid the cost of this work on his own land.

In 1952 plaintiff straightened the course of the meandering stream across his land and built a small dike along its east side. It left plaintiff's farm at the same place as before.

In September 1953 plaintiff and defendant entered into a written agreement under which the latter agreed to move his ditch to the west so there would be at least 15 feet between the line dividing the farms and the east side of the ditch. Defendant was also to fill the ditch as first built. Actually the ditch was

moved 20 feet west, it was deeper, and the north part of the dike along its west side was higher than before. The written agreement reserved to plaintiff any remedy he might have against defendant for obstructing the natural flow of surface water to plaintiff's damage.

Plaintiff's claim is that defendant's changing the ditch and dike in 1953 and placing in the ditch obstructions in the form of rocks, fencing and other debris, impeded the natural flow of surface waters from plaintiff's land and caused the specific damage of which he complains to his crops and pasture during years from 1954 to 1960.

The trial court allowed damages to plaintiff for loss of: corn crop in 1954, pasture in 1954 and 1955, 1000 bales of alfalfa in 1957, corn crop in 1959, pasture in 1959 and 1960, and one acre of land claimed to have been lost from erosion. We understand the only act of defendant the court found to be illegal, resulting in damage to plaintiff, was increasing the height of the dike along his ditch and except therefor no recovery would have been allowed.

Upon this appeal defendant relies upon three propositions for reversal: (1) The evidence fails to show his dike held back water that caused plaintiff's damage in the period from 1954 to 1960; (2) there is insufficient evidence of the proper measure of damages; and (3) the claim for damage to the 1954 crops is barred by the statute of limitations.

Our review in this equity case is de novo. Rule 334, Rules of Civil Procedure. However, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court. But we are not bound by them (rule 344(f)7, R. C. P.).

We think there is merit in all three of defendant's propositions. We consider them in the order stated.

I. As we have indicated, plaintiff's claim as pleaded is for damages resulting from defendant's changing the ditch and dike after the agreement of September 1953 was made and from his placing obstructions in the ditch. No complaint is made of any prior act of defendant. Further, it clearly appears defendant's original ditch and dike were built in 1945 pursuant to an oral

agreement between him and Killhorn, plaintiff's predecessor in title. Not only defendant but Bratt, the contractor for the work, testified to the agreement. There is no evidence to the contrary. Bratt was a wholly disinterested witness.

The permanent right of drainage may be acquired by oral agreement where time or money is expended in building and maintaining a drain in reliance upon the agreement. The right to maintain such a drain cannot be denied without the consent of all parties to the agreement. The assent of plaintiff's predecessor in title here was in the nature of a license which, having been accepted and acted upon, cannot be disregarded. Young v. Scott, 216 Iowa 1253, 1255, 1256, 250 N.W. 484, 486, and citations; Halsrud v. Brodale, 247 Iowa 273, 280, 281, 72 N.W.2d 94, 99, and citations ("We have held that landowners may contract among themselves as to drainage systems and rights, and that such agreements are binding." Citations).

Of course defendant could turn the water that came onto his land from plaintiff's in any manner he saw fit so long as he did not cast it upon plaintiff's adjoining land to his damage. Defendant was not required to let the water spread out over his land. Logsdon v. Anderson, 239 Iowa 585, 590, 30 N.W.2d 787, 790, and citations.

The only testimony for plaintiff as to the damages claimed was given by him and his two sons. The only reference by any of them to damage from the dike is that in 1954 water from the river went back to the east when it hit defendant's dike. No attempt was made to show this was caused by any increase in height of the dike when location of the ditch was changed. And plaintiff himself testified, "Anytime the river reaches flood stage it floods my land, it has as long as I can remember." Further, as we shall point out, any claim for damage in 1954 is barred by the statute of limitations. As previously stated, the trial court found the only illegal act of defendant resulting in damage to plaintiff was increasing height of the dike and except therefor recovery would have been denied.

There is evidence that in 1957 and 1959 rocks and other debris were found in the ditch just west of the boundary between the two farms. This was admitted at least as to 1959 although

the witnesses differ as to the extent of the debris in the ditch. Plaintiff and his sons testified the damage to plaintiff's farm was caused by the bend or turn in the ditch just west of the dividing line and the debris in it there. We understand there was the same bend or turn in the ditch as it entered defendant's land after the ditch was moved to the west as before. It is not clear how moving the ditch 20 feet farther from plaintiff's land could result in damage to it. The subcontractor who did that work testified "It would not substantially change any drainage. I would think it would make it better but it wouldn't have made it worse."

As the trial court found, there is no evidence rocks or debris were placed in the ditch by defendant or his tenant. Both denied doing so. Plaintiff himself said part of the material in the ditch in 1959 was a piece of woven wire he had "pinned" in the division fence at this point and it had washed against brush, snow fence and posts. When defendant's attention was called to the debris he or his son cleaned it out.

■ It is true we have held several times it is the duty of the owner of land through which a ditch runs to keep it open and free from obstructions. Mickelwait v. Wright, 194 Iowa 1265, 1268, 191 N.W. 291, 293; Miller v. Perkins, 204 Iowa 782, 785, 216 N.W. 27, 28; Logsdon v. Anderson, supra, 239 Iowa 585, 594, 30 N.W.2d 787, 792. It would seem, however, this duty would not require defendant to remove an obstruction resulting from an act of plaintiff, such as the latter's placing in the fence wire which became dislodged.

In any event, plaintiff's claim against defendant is not for failure to keep the ditch open and free from obstructions but that defendant placed them in the ditch. There is no proof of such allegation and evidence on the point is to the contrary.

II. As previously indicated, we find insufficient evidence of the proper measure of damage as to the larger items for which claim is made.

Part of plaintiff's claim is for loss of a given number of acres of corn in 1954 and 1959. With reference to 1954 plaintiff testified "the water caused the loss of about six acres of corn washed over; we couldn't get anything from it. * * * The six

acres could reasonably be expected to grow 50 bushels of corn to the acre and the fair and reasonable value of a bushel of corn was about a dollar." With reference to 1959 plaintiff's testimony is that five acres of corn land were flooded in April or May, it was too muddy to disk in the middle of May, it would have raised 50 bushels of corn per acre, in 1959 corn had a fair and reasonable value of one dollar per bushel. Plaintiff's sons gave similar testimony as to each of these years except they said the land "could have produced 50 bushels per acre" or "was capable of" doing so.

■ The proper measure of damage for loss of growing crops is their value in the field at the time of injury or their value in matured condition less the reasonable expense of maturing and marketing. Blunck v. Chicago & N. W. R. Co., 142 Iowa 146, 155–158, 120 N.W. 737; Tretter v. Chicago G. W. Ry. Co., 147 Iowa 375, 377, 126 N.W. 339, 140 Am. St. Rep. 304; Id., 154 Iowa 280, 282, 283, 134 N.W. 626; Brous v. Wabash Railroad Co., 160 Iowa 701, 704, 142 N.W. 416; Stooker v. Feil, 240 Iowa 876, 878, 879, 37 N.W.2d 918, 920; Annotation, 175 A. L. R. 159; 25 C. J. S., Damages, section 85b, pages 610–613; 15 Am. Jur., Crops, section 72.

■ Many decisions recognize there is seldom a market for growing crops as such. Tretter v. Chicago G. W. Ry. Co., supra, 154 Iowa 280, 282, 134 N.W. 626, and citations. Hence by far the most widely accepted method of arriving at their value at the time of destruction is to estimate the probable yield if the crop had not been destroyed, calculate the value of that yield and deduct the value and amount of labor and expense that would have been required, but for their destruction, to mature, care for and market the crop. Annotation, 175 A. L. R. 159, 174 to 178. And see Iowa cases supra this division.

■ There is no evidence here of the value or cost of cultivating, harvesting or marketing any growing crop had it not been destroyed. These items might well have come to a considerable amount in 1954 since, according to plaintiff's younger son, the flood occurred in June of that year when the crop must have been far from mature. "* * * the calculation as made from maturity values must include a deduction of the amount of subsequent labor and expense which would have been but actually was not

incurred, the destruction having precluded the same" (citations). Annotation, 175 A. L. R. 159, 174.

As to plaintiff's claim for loss of unplanted corn in 1959, no attempt was made to show the cost of seed, planting, cultivating, harvesting or marketing the crop. We assume, without so deciding, there is sufficient evidence the land would have produced 50 bushels of corn per acre if it had not been flooded. However, a finding to this effect would have been strengthened by evidence of the average yield per acre of similar land in the neighborhood.

One item of damage claimed is from flooding some alfalfa land in June 1957. Plaintiff testified, "That water covered about ten acres of alfalfa * * *. As a result I lost possibly 1000 bales of alfalfa worth a fair and reasonable price of about 50 cents per bale." Plaintiff's older son said ten acres of alfalfa was ruined by water in 1957. There is no evidence of the cost of harvesting or baling the crop.

Plaintiff's older son testified, "Since 1953 there was erosion on one acre of the Eppling farm. One acre was worth about $275." The only other testimony we find on this point is plaintiff's statement, "There is an acre along the fence we couldn't farm in 1959 or 1960." The trial court allowed $275 for this item. Plaintiff's petition makes no claim for it. Moreover we think the evidence is insufficient to support any allowance therefor. There is no testimony that erosion destroyed the acre of land or rendered it valueless. Plaintiff's own evidence indicates merely it could not be farmed for two years. The measure of recovery for injury to this acre from erosion would not be more than the difference in its fair value immediately before and immediately after the injury. Grell v. Lumsden, 206 Iowa 166, 169, 170, 220 N.W. 123; Irvine v. City of Oelwein, 170 Iowa 653, 662, 150 N.W. 674, L. R. A., 1916E 990; City of Ottumwa v. Nicholson, 161 Iowa 473, 479, 480, 143 N.W. 439, L. R. A., 1916E 983; 25 C. J. S., Damages, section 84; 15 Am. Jur., Damages, section 109.

There is competent proof of some smaller items of damage for which recovery could be had if there were sufficient showing the proximate cause thereof was defendant's wrongful conduct in any of the respects upon which plaintiff's claim is based.

III. We are clear plaintiff's claim for loss or injury to crops and pasture from flooding in 1954 and for removing debris from the ditch in that year is barred by the statute of limitations. Section 614.1(5), Codes 1954, 1958 and 1962, provides that actions for injuries to property and all other actions not otherwise provided for must be brought within five years after their causes accrue. Plaintiff's cause of action for injuries in 1954 accrued when they occurred. Later intermittent injuries gave rise to new causes of action when they occurred. This action was not commenced until September 2, 1960. Plaintiff could recover only the damages sustained during the last preceding five years. Drake v. Chicago, R. I. & P. R. Co., 63 Iowa 302, 309, 19 N.W. 215, 50 Am. Rep. 746; Archer v. J. S. Compton, Inc., 238 Iowa 1182, 1191, 1192, 30 N.W.2d 92, 96, 97, and citations; Annotation, 5 A. L. R.2d 302, 322, 323, 364–366, 380–382; 93 C. J. S., Waters, section 36(4), page 658; 56 Am. Jur., Waters, section 46. See also Nall v. Iowa Electric Co., 246 Iowa 832, 839–841, 69 N.W.2d 529, 533, 534.

For decree dismissing plaintiff's petition the cause is—Reversed and remanded.

All JUSTICES concur except STUART, J., who takes no part.