OWEN WITTHAUER, appellant, v. CITY OF COUNCIL BLUFFS, a domestic municipal corporation, appellee.

No. 51361.

(Reported in 133 N.W.2d 71)

494

FEBRUARY 9, 1965.

Porter, Heithoff & Pratt, of Council Bluffs, for appellant.

David E. Stuart and John M. Peters, both of Council Bluffs, for appellee.

HAYS, J.—Appellant, lessee of approximately 243.47 acres of land lying directly west of a northwest-southeast Union Pacific Railway right-of-way in Section 34, Township 75, Range 44 West, and Section 3, Township 74, Range 44 West, in Pottawattamie County, Iowa, commenced this equity action January 16, 1961, asking for a mandatory injunction requiring the defendant, City of Council Bluffs, to remove its landfill, occupying about 18 acres of a 25-acre city tract, which abuts plaintiff's land on the north, east and south, and to restore the preexisting conditions, for a permanent injunction restraining defendant from maintaining the landfill, and for damages as a result of crop losses during the years 1959 and 1960 in the sum of $20,858.64. In his petition he claimed by the operation of the landfill defendant wrongfully obstructed the flow of surface waters so as to flood a large portion of land he had leased from the Union Pacific Railroad Company. Defendant denied interference with the natural flow or passage of surface waters in the area or obstruction of the natural drainage in anyway.

The trial court held plaintiff had failed to prove the allegations of his petition by a preponderance of the evidence and entered a decree in favor of the defendant. In this appeal appellant questions all rulings adverse to him, but principally relies upon five stated propositions for reversal.

Our review is de novo. Rule 334, Rules of Civil Procedure. Nevertheless, in cases such as this where there are some 30 plats and photographs used in connection with the testimony of various witnesses, and where the trial court visited and viewed the area involved with both counsel to get a better understanding of the evidence, we should give weight to the factual findings of the trial court, and do so here. Eppling v. Seuntjens, 254 Iowa 396, 399, 117 N.W.2d 820.

In an effort to orient the plaintiff's and defendant's land with other landmarks in the area we attach a rough plat desig-

nating plaintiff's leased land as Tract A, defendant's landfill as L.F. and the railroad tracks as R.R., etc.

Plaintiff has been a lessee or co-lessee of Tract A since 1944. The city tract some 2229.4 feet in length and 510.4 feet wide abuts the Borman farm and the south section line of Section 34, Township 75 North, Range 44, on the south. Plaintiff has farmed his tract in the past raising both wheat and corn. Due to high water he lost a large part of his 1959 crop and all crops during 1960.

Defendant commenced the use of its Tract L.F. as a sanitary landfill in 1945, and in recent years this use has increased. At the time of this action some 18 acres had been filled on the west, south and east ends of the tract. The filled portion is considerably above the original surface and the surface of adjoining land. A drainage ditch dug by defendant along the south line empties onto Tract A. A smaller ditch appears along the north line, also emptying onto Tract A. The slope of this landfill is to the south, reversing the slight slope to the north of the original surface. However, according to several witnesses, the surface waters flowing south reach the same general location on Tract A, for instead of flowing north and east over the landfill tract prior to the fill, they flow some 2200 feet east and then northeast on Tract A to the impounding area.

In 1955 plaintiff's landlord, the Union Pacific Railroad Company, used a large portion of Tract A as a borrow pit for roadbed work, removing between two and four feet of topsoil from this land before it was regraded and definitely sloped toward the north and east next to the railway right-of-way.

Appellant's principal contention below and here is that the low spot in this area, originally called "Weedy Lake", was located on the city tract, and by filling this area the natural flow of surface waters was obstructed, causing them to back up and cover large areas on his tract. Thus, two very important fact questions are presented: (1) Where was the low spot called "Weedy Lake" prior to the grade changes by defendant and plaintiff's landlord? (2) Did these changes substantially alter the directional flow or the volume of surface waters affecting this area?

I. It was plaintiff's burden to prove his land was the dominant estate and, failing in that, to prove that changes made

in the surface of the landfill changed the general direction of the flow or substantially increased the volume of surface waters cast upon his land to his damage. Schmitt v. Kirkpatrick, 245 Iowa 971, 977, 63 N.W.2d 228; section 465.22, Code, 1958.

The disposition of ordinary surface waters, of course, is determined by the relative elevations of adjacent tracts. Downey v. Phelps, 201 Iowa 826, 832, 208 N.W. 499.

The trial court found the low area, or "Weedy Lake", was at all times material to this action located north and east of defendant's tract, and the alterations referred to made no material change in the flow or volume of surface waters in that area which could be chargeable to defendant.

We have carefully read the record, examined the exhibits, and noted the extensive review of the evidence in the briefs. Although this appeal presents principally a factual determination, there being no disagreement concerning the applicable law, we think nothing would be gained by bench and bar by a detailed discussion of the testimony or the photographs and maps. We agree with the trial court that the greater weight of the evidence tends to support defendant's position, and that it fails to prove the allegations of plaintiff's petition. Only the plaintiff himself squarely fixed Weedy Lake as the low spot in this area on the defendant's tract. All others believed it to be near the railroad right-of-way.

II. Appellee does not take issue with appellant's first two propositions, nor do we. In them he states the Iowa rule that the owner of the upper or dominant estate has a legal and natural easement in the lower or servient estate for the drainage of surface waters, that the natural flow or passage of the waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the estate of the dominant proprietor (Hume v. City of Des Moines, 146 Iowa 624, 125 N.W. 846, 29 L. R. A., N. S., 126, Ann. Cas. 1912B 904; Hunt v. Smith, 238 Iowa 543, 28 N.W.2d 213), and that the owner of the dominant estate may cast an additional quantity of surface waters upon the servient estate; if in so doing, he does not thereby do substantial damage to the servient estate. Dodd v. Blezek, 245 Iowa 1112, 66 N.W.2d 104; Schmitt v. Kirkpatrick, 245 Iowa 971,

977, 63 N.W.2d 228; Woods v. Incorporated Town of State Centre, 249 Iowa 38, 85 N.W.2d 519.

In the case of Cundiff v. Kopseiker, 245 Iowa 179, 185, 61 N.W.2d 443, 446, where the controversy related to drainage of a 4.30-acre tract, we said: "There is no definite evidence of the amount of additional water which flowed onto plaintiffs' land by reason of the claimed drainage of the small area heretofore mentioned. The burden of proof was on the plaintiffs to show the defendants caused an additional flow of water and the resulting damage."

Also see Board of Supervisors of Pottawattamie County v. Board of Supervisors of Harrison County, 214 Iowa 655, 672, 241 N.W. 14, 22.

Perhaps the controlling question is, which of these tracts, the plaintiff's or the defendant's, was and is the dominant estate and which the servient estate? In deciding this question the trial court said: "* * * prior to any change in the surface of the defendant's land, the surface of the plaintiff's Tract A, and the surface of the Borman land, surface waters flowing from the land of the defendant flowed, in the natural course of drainage, onto plaintiff's Tract A, and with respect to the flowage of surface waters from the land of the defendant, the said land of the defendant was the dominant estate and the land of the plaintiff was the servient estate."

■ Appellant is unhappy with this conclusion, but from the testimony of many witnesses and from topographical contour maps, it would appear that Weedy Lake, or the lowest spot in the area, elevation 969.5 feet, was along the railroad both east and north of the defendant's landfill. See Exhibits "Q", 1960, and "DD", 1955. It also appears the original surface along the extreme north line of defendant's land has not been altered, the elevation being about 972 feet, and that the elevation of the east end of the tract was almost 975 feet. Surface waters then must flow toward plaintiff's Tract A, not away from it. A former co-lessee of plaintiff testified that Weedy Lake had never extended upon the ground which is now the city landfill but was located north and east thereof. After careful consideration of all the testimony and exhibits, we are satisfied plaintiff's evidence,

viewed in a light more favorable to him, falls far short of proving defendant's tract of land was ever the lowest point in the area or the servient estate to Tract A.

III. Failing in this burden, did plaintiff prove defendant's elevation alterations caused a substantial increase in surface waters from Tract L.F. with resultant injury or damage to plaintiff? We think not.

True, defendant changed the slope of a large part of its tract from north to south where it entered a ditch. It appears this ditch at the east end was wide and deep to hold water, but when it spilled out on plaintiff's land it flowed north and east in the normal and natural direction of flow. Obviously, then, this 500-foot detour did nothing to add to the volume or velocity of the flow of surface waters from Tract L.F.

After the excavation on Tract A in 1955, the directional flow toward the north and east became more, not less, pronounced. Joseph F. Tesar, Assistant to the Division Engineer of the Union Pacific Railroad, called by defendant, testified: "From the west fence line [of Tract A] * * * the ground was supposed to slope toward the east. The purpose of that sloping was to keep any water from running onto anyone else's property other than the U.P." The grading done after the excavation purposely changed somewhat the direction of flow, especially that water from the southern and western part of the tract, and definitely made the area in the northeast part of Tract A a servient estate thereafter.

Appellant contends he obtained good crops from this land in 1957 when there was no overflowing of the tract, but claims somehow the defendant's subsequent filling and ditching permitted excessive surface waters to reach his land. We are unable to see how the raising of a portion of defendant's tract would in any way increase the flow of surface waters from it. It was plaintiff's burden to show substantial increases due to defendant's acts, but there is no evidence to sustain those contentions. True, there appeared to be more water on Tract A in 1959 and 1960, but it also appears those were very "wet" years when there was an excess of rain and snow in this area, and once this surface water reached plaintiff's tract it was impounded and could not escape except by evaporation or percolation into the soil. There was

testimony in such seasons no crop could be obtained even from the northeast corner of the Borman farm.

We are satisfied the problem created by these rains and snows, and the impounded water, cannot be solved in this equitable action. Since defendant was the dominant proprietor and no breach in its obligation was shown, it is not responsible for the increased or unnatural quantities of surface waters that came upon plaintiff's land in 1959 and 1960.

Perhaps these conclusions determine this appeal, but in fairness to counsel we shall briefly consider the other three propositions he argues.

IV. In his third proposition appellant contends the trial court erred in finding that prior to the year 1959 the surface of the leased land was so changed by the removal of soil as to prevent surface waters from flowing on adjoining property, or in finding that by excavating the railroad company changed the natural flow of drainage over, across and through Tract A. No authorities are cited, for, as appellant admits, this is strictly a fact question. However, it seems to be one on which we have already expressed ourselves. That the surface of a large part of Tract A was altered is not open to question. Land was needed for new right-of-way construction and a base for a new Diesel house. Photographic Exhibit "PP" is a clear picture taken near the southwest corner of the landfill and shows the posts of a power line running along the south line of Section 34, Township 75 North, Range 44 West. It reveals mounds at the base of the poles indicating the depth of the general excavation. From this picture and the testimony of railroad officials, it appears the cut extended to the south sufficiently to cause some of the surface waters which formerly flowed south to now flow north.

There is also evidence that the Borman farmland was also leveled along the east line abutting Tract A so that some of the surface waters from that land could flow east, enter the north slope, and thence north to the concentration area, rather than to flow south through a former ditch draining southward. There was no error in this assignment.

V. In his fourth proposition appellant asserts a municipal corporation is liable for damming up or obstructing the flow of

surface waters to the injury and damage of abutting property, and such liability may be predicated upon the negligence of the municipal corporation in doing the work. He cites Hume v. City of Des Moines, supra, 146 Iowa 624, 125 N.W. 846, 29 L. R. A., N. S., 126, Ann. Cas. 1912B 904, and Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A. L. R.2d 1164, as authority therefor. We fail to find any pronouncement in either which reaches the controlling question here. Defendant's land was not the servient estate and we are satisfied that it did nothing negligently or willfully to cause surface waters to back up on plaintiff's Tract A. The flow we have found was toward, not from, Tract A, and there is no evidence the landfill restrained a back flow from plaintiff's land.

Appellee points out the maintenance of a city landfill is a governmental function and contends the defendant is not chargeable with negligence in the maintenance and operation thereof. While section 368.24 of the 1958 Code (now 1962) does provide that cities may provide for the collection and disposal of garbage and refuse, we are not prepared to say the city would not be liable for negligent operation of such a landfill. We shall cross that bridge when we must.

 VI. In his last proposition appellant correctly states the rule as to the measure of damages for loss of growing crops from water erosion. We have said it is their value in the field at the time of the injury or their value in a matured condition less the reasonable expense of maturing and marketing. Brous v. Wabash Railroad Co., 160 Iowa 701, 142 N.W. 416; Eppling v. Seuntjens, supra, 254 Iowa 396, 402, 117 N.W.2d 820, and citations. Appellee contends and the trial court found no competent evidence of these values. While we may or may not agree with that determination, since we find no fault or liability established against defendant, the question of damages is given no special consideration here.

 VII. It appears the defendant has encroached upon Tract A with its landfill covering an area of some 160x130 feet. The trial court recognized this encroachment but found there was no showing that it was the cause of or the proximate cause of any damages in plaintiff's complaint. It further found no showing of

a future or vested interest therein by plaintiff to justify the issuance of an injunction compelling the defendant to remove the encroachment. However, it did reserve jurisdiction solely for the purpose of entering such an injunction provided plaintiff make an application to the court showing some future or vested interest in the land which would entitle him to its use. That portion of the decree was proper and just and should stand, providing plaintiff acts within a reasonable time. Having found no reversible error in these proceedings, the judgment of the trial court must be affirmed.—Affirmed.

All JUSTICES concur.