In re the MARRIAGE OF Pamela S. MARTIN and Warren L. Martin

Upon the Petition of Pamela S. Martin, Petitioner–Appellee,

And Concerning Warren L. Martin, Respondent–Appellant.

No. 87–1399.

Court of Appeals of Iowa.

Dec. 22, 1988.

Greg A. Life, Oskaloosa, for respondent-appellant.

Michael J. Elwood, Marengo, for petitioner-appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

Respondent Warren L. Martin appeals the economic provisions of the dissolution decree. He claims the division of the parties' marital property is inequitable and that the court was in error in awarding rehabilitative alimony. We affirm with modification.

The parties, who were married in 1966, are the owners of two hundred acres of farm land upon which there was, at the time of trial, minimal indebtedness. They were also the owners of certain farm machinery, part of which they owned only a one-half interest. The parties' other property consisted of stored corn and soybeans, two checking accounts, PIK certificates (government program certificates entitling them to "in-kind" commodities), and certain household goods and equipment. At the time of trial there were growing crops on the parties' farm land and on Warren's mother's farm, which Warren farmed in shares.

Upon trial, the court placed the following values upon the assets and liabilities of the parties:

| Assets | | | |
|---|---|---|---|
| Farm real estate | | | $124,000 |
| Crops | | | |
| 1986—on hand | | | |
| 4,000 bu corn @ $1.50 | | 6,000 | |
| 1,900 bu beans @ $5.00 | | 9,500 | |
| PIK | | 1,900 | |
| 1987—growing crop estimate | | | 17,400 |
| 168.1 A corn @ 119 × $1.82 | $36,407 | | |
| 114 A beans @ 35 × $4.77 | 19,032 | | |
| | | | 55,439 |
| Cash | | | |
| Checking | | | |
| Husband $3,500 + proceeds 1,100 bu. beans sold during week of 8/3/87 | | | 9,000 |
| Wife | | | 1,400 |
| Farm Equipment & Automobiles | | | 57,840 |
| Stacie's Automobile | | | 5,775 |
| Household goods & furnishings | | | 5,000 |
| Total Assets | | | $275,854 |

| Liabilities | | |
|---|---|---|
| Long Contract | $7,500 | |
| Martin Contract | 2,500 | |
| | $10,000 | |
| Bank | | 10,000 |
| | | $20,000 |

Net Worth: $255,854

Based upon these valuations, the court awarded Pamela $122,527, payable in ten equal installments and bearing interest at the rate of ten percent per annum. The court also awarded Pamela household goods worth $2,500, a Chrysler automobile valued at $1,500, and her checking account in the amount of $1,400, all of which represented one-half of the parties' net worth as determined by the court. The farm was awarded to Warren, subject to the lien awarded to Pamela. The court further awarded Pamela rehabilitative alimony in the amount of $500 per month for a period of four years. The court also ordered Warren to pay $1,000 in attorney's fees.

■ Our review of the court's decree in this equity matter is de novo. Iowa R.App. P. 4. We give weight to the trial court's findings, but we are not bound by them. *Marriage of Sparks*, 323 N.W.2d 264, 265 (Iowa App.1982). We consider Warren's property claims separately.

■ Warren first contends that the value of the farm real estate, as found by the court, is in error. Warren testified that in his opinion, the real estate had a value of $92,000. In his brief, he states that the trial court should have valued the land at $102,000. Upon our careful review of the record, we find that the valuation fixed by the trial court was based upon a thorough and careful appraisal by a highly qualified land appraiser. While we do not criticize the appraisal made by Warren's appraiser, we believe petitioner's appraiser was more thorough in his reasoning and documentation, and we affirm the court's finding that the real estate has a value of $124,000. There seems to be no dispute as to the value of the 1986 crops on hand. We accept these values, as did the trial court.

Warren next objects not only to the valuation fixed upon the growing crops, but

upon the court's consideration of those growing crops as marital property. He claims since the crops represent his earnings for the year, they should not be considered in the valuation of marital property subject to division. In the alternative, he contends that if the growing crops are to be considered in the valuation of marital property, the court erred in several respects in arriving at their value. We believe there is a question as to whether growing crops should be valued separately from the real estate when establishing the value of marital property. However, we are unable to find any case where this question has been specifically addressed.

In *Fawcett Investment Co. v. Rullestad,* 218 Iowa 654, 253 N.W. 131 (1934), and *Whiteside v. Morris,* 197 Iowa 211, 197 N.W. 56 (1924), the supreme court faced the determination of the status of growing crops, and held that: "It is, of course, true ... that growing and immature crops are a part of the land and pass under a conveyance of the land...." *Whiteside,* 197 Iowa at 213, 197 N.W. at 57. Those cases also hold that "the owner may, by his voluntary act, so far separate the growing crops from the soil as to pass title thereto, independent of his estate in the land." *Id.; see also Fawcett,* 218 Iowa at 657, 253 N.W. at 133.

■ In this matter, we seek an equitable division of the marital property of these parties. Although the growing crop may be considered an expectancy only, it is an accrued and accruing asset and has a value to the parties. Indeed, were that growing crop to be partially damaged or totally destroyed by the negligent act of some third party, the process for determining its value is well established in Iowa law. In *Manning v. International Harvester Co.,* 381 N.W.2d 376, 379 (Iowa App.1985), our court stated: "The proper method of measuring crop damage is the difference between the value the crop should have had and the value actually obtained, less any expenses." In *Martin v. Jaekel,* 188 N.W.2d 331 (Iowa 1971), the supreme court approved the following method of determining damages for the total destruction of growing crops:

[T]he proper measure of damage for loss of growing crops is their value in the field at the time of injury or their value in matured condition less the reasonable expense of maturing and marketing. Since there is seldom a market for growing crops as such, by far the most widely accepted method of arriving at their value at the time of destruction is to estimate the probable yield if the crop had not been destroyed, calculate the value of that yield and deduct the value and amount of labor and expense that would have been required, but for their destruction, to mature, care for and market the crop.

*Id.* at 335 (citing *Eppling v. Seuntjens,* 254 Iowa 396, 402, 117 N.W.2d 820, 824 (1962)). Although we are not dealing here with the destruction of the growing crops, we believe that the method for arriving at the value of the whole crop, as set out in *Eppling,* appears to be the fair method of valuation.

■ We thus conclude that in attempting to value marital property in a dissolution action, the value of crops growing upon real estate owned by both parties may be considered as property separate from the value of the real estate. In the case at bar, we agree with Warren that the court erred in setting that value, although we do not agree with Warren's suggestion that the growing crops should have been valued at $14,051.

■ It appears from the record that the court failed to set off that portion of the growing crops that were the landlord's share, but instead included all crops as marital property. Fifty percent of the crops growing upon his mother's land belonged to his mother. There likewise does not seem to be any recognition of costs to be incurred in harvesting the crops. In arriving at the value of those growing crops, the reasonable cost of harvest must be considered. In sum, we believe the court erred in setting the value of growing crops.

■ Warren further disputes the court's valuation of the farm machinery. He claims that the court failed to consider the

value of the machinery owned in shares with others. The undisputed testimony at trial established that some of the farm machinery was owned in shares with either Warren's mother or his brother. To the extent that the court failed to consider those interests, the court was in error. After careful review of the record, we conclude that the court assigned a total value to the machinery that is not justified by the record.

■ We likewise find no reason to disbelieve Warren's testimony that he has a debt obligation to his mother in the amount of $15,000.

Based upon our review of the record in this matter, we believe that in addition to the checking account, the household goods, and the Chrysler automobile awarded to Pamela by the trial court, she should be awarded $100,000 as her share of the value of the parties' marital property. The award shall constitute a lien upon the real estate awarded to Warren until paid in full. Payment of that amount shall be as follows: $25,000 plus accrued interest within sixty days from the filing of procedendo in this matter, with the balance in equal installments of $7,500, plus interest, payable on or before the first day of January of each year commencing January 1, 1990. The award shall draw interest from August 12, 1987, at a rate of ten percent per annum. Warren shall have the right to prepay any or all of the award at any time.

■ As Pamela will have capital available for investment, the alimony ordered by the court shall be payable for only two years from September 1, 1987. That alimony shall cease upon the death of either of the parties, or on August 1, 1989, whichever shall occur first.

The trial court's award of attorney fees to Pamela is affirmed. The parties shall pay their own attorneys' fees on this appeal, and each party shall pay one-half of the costs of this appeal.

AFFIRMED AS MODIFIED.

SACKETT, J., concurs.

HAYDEN, J., dissents in part.

HAYDEN, Judge (concurring in part and dissenting in part).

I concur with the majority except I would modify the term of alimony payments to also terminate upon the contingency of Pamela's remarriage or cohabitation with another man if either should occur.