Wilfred THOME and Lorraine Thome, Plaintiffs–Appellants,

v.

Bernard G. RETTERATH and Betty A. Retterath, Contract Buyers, and Leon Werner and Lucille M. Werner, Contract Sellers, Defendants–Appellees.

No. 87–1755.

Court of Appeals of Iowa.

Sept. 28, 1988.

Roger L. Sutton of Sutton Law Office, Charles City, for plaintiffs-appellants.

Richard H. Gross of Casey, Doll & Gross, Osage, for defendants-appellees.

Considered by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

We address the issue of whether the trial court was correct in denying Plaintiffs–Appellants Wilfred Thome and Lorraine Thome, injunctive and monetary relief for

the alleged improper usage by Defendants–Appellees Bernard G. Retterath and Betty A. Retterath, and Leon Werner and Lucille M. Werner of a drain tile line on the plaintiffs' real estate. We review the record de novo. Iowa R.App.P. 4. We affirm the trial court.

Plaintiffs and Defendants Leon and Lucille Werner were parties to a drainage agreement in 1976. Defendants Bernard G. and Betty A. Retterath are contract purchasers of the land Defendants Werner owned in 1976. Werners still hold the vendor's interest in the contract. The crux of this case is the parties' understanding of their rights and obligations concerning the use of the 1976 system. Plaintiffs sought relief because they contended defendants' current use of the system is greater than Defendants Werner contracted for when the system was installed.

The plaintiffs' farm is a 160 acre tract described as southwest quarter of section 24, township 100, range 16 in Mitchell County. Defendant's farm is in the northeast quarter of the same section. In 1976 plaintiffs initiated a process of inquiry concerning a tiling program that would involve the plaintiffs' farm and defendants' farm and also adjacent property known as the Koenig farm in the southeast quarter of section 24, township 100, range 16 of Mitchell County. The natural course of drainage is southwesterly. Plaintiffs' farm is south and west of defendants'. Water from the affected acres of the defendants' farm and the Koenig farm drain through a system situated on the plaintiffs' farm going from the northeast corner to the south boundary thereof.

As a result of the initial inquiries by plaintiffs an "Inventory and Evaluation" was prepared by the ASCS. It identified a water shed consisting of a 63 acre drainage area with 60 of those acres being listed as wet acres; 30 of the wet acres were identified as being on plaintiffs' farm, 20 wet acres were identified as being defendants' farm and 10 wet acres identified as on Koenig farm. The proposal met ASCS specifications and called for 1,700 feet of six inch plastic drainage tile to service the

20 wet acres on the defendants' farm and 1,500 feet of five inch plastic drainage tile serving the 10 wet acres on the Koenig farm. Both lines ran southerly across the plaintiffs' farm into 200 feet of eight inch clay or concrete drainage tile at the south end of plaintiffs' farm. This proposal was reviewed by plaintiffs, defendants Werner and Koenig in 1976. The three elected not to follow the recommendations. Instead plaintiffs installed a system which utilized some 3,220 feet of five inch plastic tile and 500 feet of six inch plastic tile to serve as the two primary lines contemplated by the ASCS proposal. The westerly line serviced the defendants' farm. The easterly line services the Koenig farm. These lines also service plaintiffs' farm. The parties paid their own share of the costs of the project with plaintiffs calculating their shares on the cost of expanding their lines from four inch to five inch and by applying a multiplier times the number of acres being drained into their system.

Plaintiffs contend defendants Werner agreed they would not be tiling over 8 to 10 acres because they did not plan on remaining in farming very long. Therefore, plaintiffs used five inch line instead of six inch line for the majority of the main lines and six inch instead of eight inch at the lower end. Plaintiffs contend they used smaller lines because defendant Werner agreed not to tile more than 10 acres. Plaintiffs contend the installed system was adequate to handle 10 acres of defendants' wet lands but that it was not sufficient to handle additional drainage. There was no written agreement.

Plaintiffs contend the acres defendants Werner were to drain were not many. Defendant Werner contended he did not want to put many acres in but was unsure of what a subsequent purchaser would do and he never agreed to only drain 10 acres.

In 1983 Defendants Werner and Defendants Retterath entered into the installment contract for sale of the property. During that year additional tiling was performed on the defendants' farm, the effect of which was to increase the area drained from approximately 2–½ to 3 acres serviced

by the original 1976 installation to 20.2 acres.

We agree with the trial court's assessment and find the evidence does not support plaintiffs' contention the 1976 agreement limited drainage from defendant's farm to ten acres.

The next question becomes whether defendants have taken action which damages plaintiffs' estate. The natural flow is from plaintiffs' land across defendants' land. Iowa Code section 465.22 (1987) provides as follows:

> Owners of land may drain the same in the general course of natural drainage by constructing or reconstructing open or covered drains, discharging the same in any natural watercourse or depression whereby the water will be carried into some other natural watercourse, and when such drainage is wholly upon the owner's land the owner shall not be liable in damages therefor, nor shall any such owner in constructing a replacement drain, wholly on the owner's own land, and in the exercise of due care be liable in damages to another in case a previously constructed drain on the owner's land is rendered inoperative or less efficient by such new drain, unless in violation of the terms of a written contract. Nothing in this section shall in any manner be construed to affect the rights or liabilities of proprietors in respect to running streams.

■■■ The owner of the upper or dominant estate, here the defendants, have a legal and natural easement in the lower or servient, here the plaintiffs, estate for the drainage of surface waters. The natural flow or passage of the waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the dominant proprietor. The owner of the dominant estate may cast an additional quantity of surface water upon the servient estate, if in so doing, he does not thereby do substantial damage to the servient estate. *See Ditch v. Hess,* 212 N.W.2d 442, 448 (Iowa 1973); *Witthauer v. City of Council Bluffs,* 257 Iowa 493, 133 N.W.2d 71, 74–75 (1965). *See Rosendahl Levy v.*

*Iowa State Highway Comm'n,* 171 N.W.2d 530 (Iowa 1969); *Dodd v. Blezek,* 245 Iowa 1112, 66 N.W.2d 104 (1954). The owner of dominant land has the right to drain his land into a natural watercourse, despite the fact the quantity of water cast upon the servient estate is somewhat increased. *Dodd v. Blezek,* 245 Iowa 1112, 1120, 66 N.W.2d 104 (1954). An upper landowner may construct a drain to make possible the carrying of water from his land in its natural and usual course onto and over the land of another unless it can be shown there is an increase of water which materially results in damage to the lower landowner. *Dodd,* 245 Iowa at 1121, 66 N.W.2d at 109.

■■■ The evidence does not support a finding defendants have increased the flow over plaintiffs' property so as to do substantial damage to plaintiffs' land.

We affirm the trial court.

AFFIRMED.