# IN THE COURT OF APPEALS OF IOWA

No. 19-1812
Filed July 22, 2020

**RV CENTRAL, INC.,**
 Plaintiff-Appellant,

**vs.**

**STANLEY VANDER PLAATS,**
 Defendant-Appellee.

_____

Appeal from the Iowa District Court for O'Brien County, Carl J. Petersen, Judge.

RV Central, Inc. appeals the district court order determining the fair value of a dissenting shareholder's shares of the corporation after a reverse stock split and awarding the dissenter attorney fees. **AFFIRMED.**

Daniel E. DeKoter of DeKoter, Thole, Dawson & Rockman, P.L.C., Sibley, for appellant.

Amanda J. Bahena of Woods, Fuller, Shultz & Smith P.C., Sioux Center, for appellee.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

After a reverse stock split, RV Central, Inc. sued to determine the fair value of a dissenting shareholder's shares of the corporation. The district court relied on a June 2018 appraisal to value the corporation's land, found RV Central acted arbitrarily in omitting the value of crops on the land from its share valuation estimate, and awarded attorney fees to the dissenting shareholder. RV Central appeals. The dissenting shareholder asks us to affirm the district court order and award appellate attorney fees.

## I. Background Facts and Proceedings.

In 1991, Stanley Vander Plaats and Donald Roetman incorporated RV Central, Inc. At the time of incorporation, Donald had an 88.11% ownership interest and Stanley had an 11.89% interest. The company operated as a recreational vehicle sales and repair company in Sheldon, Iowa, until it began liquidating in 2015.

In April 2017, Stanley sued RV Central; Donald; and Donald's wife, Dianna; claiming that his ownership percentage of RV Central was 50% and requesting damages. Stanley amended his complaint to add several additional claims, including a claim for rent that RV Central owed on a building that Stanley and Donald owned as tenants in common. The court later granted RV Central, Donald, and Dianna's motion for summary judgment, establishing Stanley's ownership percentage at 11.89%. The lawsuit remained pending on Stanley's other claims. The parties later settled all claims except for the rent claim, which merged with this pending valuation case.

In December 2017, the parties agreed to have RV Central's building and land appraised. They hired Richard Vander Werff, an appraiser with over thirty-five years of experience, who had appraised RV Central's property before. The appraisal categorized the existing building site as commercial property and the rest of the property as agricultural use. The appraisal valued the building site at $305,000. The farmland was valued at $985,000, or $13,412.31 per acre. In his appraisal, Vander Werff discussed the development possibilities near the property, stating,

> Since the opening of the Highway 60 bypass, very little new development has occurred along old Highway 60 [near RV Central]. This signals that development within the city of Sheldon will continue to be primarily in eastern Sheldon near the Highway 60 bypass.
> This would suggest that the subject has no added value for future commercial, industrial or residential development.
> Also, there is ample land available to the north and east of the subject, closer to city development which would likely be developed before the subject.
> The subject property would likely not be developed within the foreseeable future.

After the appraisal, Vander Werff gave both Donald and Stanley the opportunity to meet with him to discuss his conclusions. Stanley was very dissatisfied and met with Vander Werff on at least two occasions to discuss his concerns that the appraisal was too low. Donald did not take Vander Werff up on his offer.

Two months after the appraisal, on February 1, 2018, Maintainer Corporation, a business located about one-eighth of a mile from RV Central, bought the building site and some land for $435,000. The purchase price was almost thirty-five percent more than the appraised value.

After hearing about the sale, Vander Werff, with Stanley and Donald's permission, issued a second appraisal on June 19. The second appraisal reclassified 7.37 acres of land next to Old Highway 60 and directly south of RV Central's former building site as commercial land and reclassified the remaining land as transitional agricultural land. The appraisal found the total value of the land to be $1,241,000, with the commercial land valued at $221,000 and the transitional agricultural land at $1,020,000. In the new appraisal, Vander Werff stated,

> [T]he old Highway 60 thoroughfare has seen limited development since 2006, in fact prior to the sale of the RV Central shop/office building and site, there seemed to be little appetite for commercial property in this area. However, given the sale[] price and demand for this facility and the surrounding site (when it was listed) which sold with it, we as the appraisers have taken a 2nd look at this location and its potential for development. It does appear there may be demand for development land in this area. Likely development would not be of a retail nature, however more of a light industrial demand along with some commercial uses such as shop, service etc. It is physically possible residential development could occur in this area. Conversations with market participants have led us to opine, residential development may be a potential usage for all or a portion of this site as well.
> However, there has been no actual development of larger parcels of land in this part of Sheldon, for at least the past 10 years.
> Any interim use, prior to development would likely be agricultural.

In July, having established his majority ownership, Donald initiated a reverse stock split. Stanley objected, but on July 23, Donald, by proxy, approved the stock split at a special meeting. As a result, the number of outstanding shares was reduced and the shareholders had to sell the company any fractional shares they owned after the reduction. Through the reclassification of shares, all of

Stanley's shares and some of Donald's shares became fractional and subject to sale to the company. Donald became the sole shareholder.

On August 21, RV Central paid Donald $44,135.63 and Stanley $93,115.32 for their fractional shares. On September 26, Stanley sent a notice demanding further payment and a computation of the value of his share of the corporation. Stanley submitted his own share valuation computation, alleging the company value was $1,104,115.14 plus the value of the "2018 crop" and the "tax credit estimate value." He left the value of those two items open claiming a lack of access to company information. He later amended his valuation to include the value of the crop and an estimated value of the tax loss carryforward. The parties also engaged in settlement discussions during this time.

On October 5, RV Central started this lawsuit to determine the value of Stanley's shares. The parties stipulated to several facts but could not agree on various valuation issues or the rent issue that merged from the first lawsuit, so the case proceeded to a bench trial on July 19, 2019.

The court entered its ruling in October. The court accepted Vander Werff's second appraisal to determine the land value and determined that the 2018 crop was worth $33,646.64. The court entered judgment in favor of Stanley for $33,098.22 and awarded him $11,751 in attorney fees under Iowa Code section 490.1331 (2018), concluding that RV Central's failure to include the crop in its initial valuation was "arbitrary" under the statute.

RV Central appeals. Stanley moved to strike a document in the appendix as well as RV Central's arguments in its reply brief based on this document. The

Iowa Supreme Court determined this motion to strike should be submitted with the appeal before transferring the case to us.

## II. Standard of Review.

"Actions to determine the value of dissenters' shares pursuant to section 490.1330 are at law." *Sec. State Bank v. Ziegeldorf*, 554 N.W.2d 884, 888 (Iowa 1996). This case, however, was tried in equity. "We have said we will review a case on appeal in the same manner as it was tried in the district court." *Id.* "Therefore our review is de novo. Nevertheless, we give considerable deference to the trial court's factual determinations." *Id.* (citation omitted).

## III. Analysis.

**A. Stanley's Motion to Strike.** At the outset we address Stanley's motion to strike RV Central's inclusion of the Uniform Standards of Professional Appraisal Practice (USPAP) in the appendix and the arguments relating to these standards in RV Central's reply brief. RV Central resists, arguing that the USPAP was adopted into the Iowa Administrative Code to apply to all licensed appraisers. *See* Iowa Admin. Code r. 193F-7.2 ("The standards of practice governing all real property appraisal activities shall be the [USPAP], including Provisions, Rules, Comments, and Statements . . . ."). That said, as RV Central notes, this administrative rule does not list the specific USPAP standards. RV Central argues we may take judicial notice of the standards as legislative facts.

Iowa Rule of Appellate Procedure 6.801 provides that "[o]nly the original documents and exhibits filed in the district court case from which the appeal is taken, the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court

constitute the record on appeal." Vander Werff referred to these standards in his appraisals and during his testimony at trial, but these standards were not offered or admitted as an exhibit to the district court, nor did RV Central make any arguments to the district court about these standards.

We decline RV Central's request to take judicial notice of the USPAP standards as legislative facts. *See generally Varnum v. Brien*, 763 N.W.2d 862, 881 (Iowa 2009) (discussing legislative facts). We grant Stanley's motion to strike and will not consider the USPAP standards or RV Central's arguments based on these standards in our opinion.

**B. Trial Court Attorney Fees.** "An award of attorney fees and expenses [in a stock valuation case] is a two-step process under section 490.1331." *Sec. State Bank*, 554 N.W.2d at 893. "As a prerequisite for such an award, the trial court must make a factual finding that the corporation did not substantially comply with chapter 490 or acted arbitrarily, vexatiously or not in good faith." *Id.*; *see also* Iowa Code § 490.1331. But as noted above, because the case was tried in equity, we review this district court's factual findings under a de novo review. *Sec. State Bank*, 554 N.W.2d at 893–94. "If a factual basis for an award of attorney fees exists . . . we then examine the trial court's decision to award or not award fees for an abuse of discretion." *Id.* at 893. "The amount of any award is also reviewed for an abuse of discretion." *Id.* at 894.

RV Central was required, under Iowa Code section 490.1324(1), to pay Stanley "the amount the corporation estimates to be the fair value of [his] shares, plus interest." To do so, the corporation must use "customary and current valuation

concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal."  Iowa Code § 409.1301(4)(b).

RV Central argues its decision to leave the crop value out of its valuation had a legal and factual basis because at the time of valuation, RV Central did not know how many bushels would be harvested, whether harvesting would occur, or the value of the harvest because crop markets fluctuate day to day.  In preparation for trial, RV Central estimated the crop was worth $24,330.47, noting that the value "should be computed using a formula similar to that used for Iowa's inheritance tax purposes."  This formula used the price per bushel on August 21, 2018, the date RV Central paid Stanley for his fractional shares.

But certainly, RV Central knew there were crops in the field, that they had value of some amount, and that the crop impacted Stanley's valuation.[1]  So we agree with the district court that RV Central acted arbitrarily in failing to include an estimate of the crop's value in its valuation of Stanley's share.  "'[A]rbitrary' means an unreasoned decision made without regard to law or facts."  *Sec. State Bank*, 554 N.W.2d at 894.  This case highlighted at least two ways to estimate a crop's value—the inheritance tax formula RV Central suggested at trial or the probable-yield method Stanley suggested and the court ultimately used.  *See* Iowa Admin. Code r. 701-86.11(7) (using proration formula to value a decedent's growing crops for inheritance tax purposes); *Martin v. Jaekel*, 188 N.W.2d 331, 335 (Iowa 1971) (using probable-yield valuation in a negligent-destruction-of-crops case); *In re Marriage of Martin*, 436 N.W.2d 374, 376 (Iowa Ct. App. 1988) (using probable-

---

[1] RV Central also insured the crop in the event of some crop failure.

yield valuation to determine equitable division of property in a dissolution case). Rather than use a common formula to estimate the crop's value, RV Central omitted it from the estimate of Stanley's share. This decision was unreasoned and made without regard to the law or facts.

RV Central argues that even if it did act arbitrarily, the district court should not have awarded Stanley attorney fees for the entire case based on only one of many valuation issues. Instead, RV Central argues we should only award 11.8% of the total fees requested, proportionate to Stanley's recovery on the crop valuation issue. RV Central points to factors the district court failed to consider. The factors important to an award of fees are "the time expended, the nature of the services rendered, the amount in controversy, the relative difficulty and importance of the issues raised, and the results obtained." *Beckman v. Kitchen*, 599 N.W.2d 699, 702 (Iowa 1999). We need only determine whether the court "has applied an improper standard, failed to follow established legal rules, or has based the decision on a record devoid of facts to support the decision." *See Edson v. Chambers*, 519 N.W.2d 832, 834 (Iowa Ct. App. 1994). And the charge once Iowa Code section 490.1331 is implicated is to fashion an equitable award.

To aid the court, Stanley's attorney submitted an updated fee affidavit that included only attorney fees and costs incurred during "the determination of the value of his shares." Stanley's attorney confirmed that the affidavit did not include attorney fees incurred for prosecuting the rent claim or for amounts incurred before Stanley received notice of the reverse stock split. The attorney stated, "I have done my best to deduct any charges on the attached statements related to the jury

trial and any charges not directly involving the squeeze-out and corporate valuation."

In its ruling, the court noted that the parties stipulated to several facts and that various valuation issues did not require legal conclusions. Only the crop valuation, a tax loss carryforward, and the amount of the parties' attorney fees required any sort of extended legal analysis. RV Central's request to award a percentage of the attorney fees based on Stanley's recovery on the crop-valuation issue does not bear any relation to the work Stanley's attorney did related to that issue. Other than objecting to the total amount, RV Central has not identified the specific fee entries it believes are unreasonable. Because the district court did not abuse its discretion, we find the court's $11,751 attorney fee award reasonable and affirm on that issue.

**C. District Court's Use of Second Appraisal.** Next, RV Central argues the court should have relied on Vander Werff's first, not second, appraisal in determining land value. RV Central claims Stanley's interference tainted the second appraisal and that several factors, including Sheldon's declining population and the lack of significant development in the area, undercut the appraiser's opinion. RV Central argues that the sale to Maintainer Corporation was a one-off sale and, relying on Iowa Code section 441.21(1)(b)(1), which applies to county assessors, Vander Werff should not have used the sale as an indication of demand in the area.

Iowa Code section 441.21(1)(b)(1) does not apply to Vander Werff because he is not a county assessor and he was not determining the taxable value of the property. Even so, RV Central argues this provision is analogous to our case. This

section provides in relevant part, "sale prices of property in abnormal transactions not reflecting market value shall not be taken into account, or shall be adjusted to eliminate the factors which distort market value, including but not limited to . . . purchase of adjoining land or other land to be operated as a unit." Iowa Code § 441.21(1)(b)(1). Dianna testified that Maintainer Corporation "adjoins [RV Central] basically," but Maintainer Corporation's land was about one-eighth of a mile away. The testimony at trial established that Maintainer Corporation was building an addition to its current facility, so we will presume the purchase of the land was to operate as a unit.

Even if we use the analogous Iowa Code provision as a guide, RV Central does not establish how the 2018 appraisal failed to adjust or eliminate factors that may have distorted the market value of the property. Vander Werff used a direct sales comparison approach in the June 2018 appraisal, using four comparable sales to value the commercial land and six comparable sales to value the agricultural land. In his appraisal, he noted that the sale to Maintainer Corporation was an arm's-length transaction, which RV Central does not dispute. Vander Werff researched the market in Sheldon, including speaking with a broker in the area and the Sheldon economic development director and looking through his company's database of commercial and industrial sales over the last three years. He also referenced other current development around the industrial park during his testimony.

Vander Werff was the only expert to offer an opinion on the value of the land. Noting that over the past twenty years he completed the majority of commercial appraisals in the Sheldon area, Vander Werff touted his expertise with

the market. Vander Werff listed his qualifications, which include over thirty-five years of experience performing appraisals and his completion of "well over 100 commercial appraisals annually since 1991." Vander Werff testified that he had no personal relationship with either Donald or Stanley and that he and his assistant decided to do a second appraisal on their own after hearing about the sale to Maintainer Corporation.

At trial, Vander Werff explained his reasoning behind his decision to complete a second appraisal,

> Number one, the building and the site sold for nearly thirty-five percent higher than our appraisal . . . and it sold in a very short period of time. And so that clearly indicated to us—and when I say us, Clark De Vries & Associates, general appraiser, and worked with Vander Werff & Associates as my partner in the commercial appraisal land. So clearly we felt we had to look at that sale, and when we started visiting with the participants in that sale, it became evident that one of the motivating factors or the primary motivating factor for buying that property was the site.
>
> And it didn't come out then, but now it has come out that Maintainer is building a large new building addition on that site. Um, I forget the dollars, but it's a $3 or $4 million property. So to us as appraisers when we see that happen, and especially on property we're so familiar with, it's like, hey, what's going on here because it— it sold for thirty-five percent over what we had appraised it for previously, and it was probably a marketing time of thirty days or less. So that indicates a demand. That indicates that there would be demand for that property.
>
> So that led us to doing some steps that probably aren't typically done in an appraisal format, but I felt in this case it was necessary because we don't have a dog in this fight, and we just want to look at the property and appraise it fairly for both parties. Um, it was as simple as that.
>
> So we visited with the Sheldon economic development director regarding their potential interest in developing the property or developing property in that area, and they certainly indicated a direct interest. If that property would be available, they would be interested in purchasing it.
>
> Also, at that time they were negotiating the sale of thirty-three acres on the north side of Sheldon to Rise Ministries or Rosenboom. Nothing could be said about it at that time because it was not public,

but it was—it was in the works, and since we completed the 2018 appraisal it has now become public, and Rosenboom, on behalf of Rise Ministries, purchased about thirty-three acres for a little over $18,000 per acre.

So those factors led Clark and I to believe that we needed to take a second look at the bare land, the portion of the land that was left, and that's what—that's what we proceeded to do. Um, we asked both parties if it would be okay if we took a second look at it not knowing where we were going to come up with or what we were going to do, but both parties agreed to have us take a second look at it. So we did, and the subsequent appraisal indicates a higher value, um, a greater transitional use, a likely development in a shorter period of time, all—all of which the data was developed and arrived from the market, changes in market.

So that is the reason for the two appraisals. Is it unusual? Yes, it is. Like I said, I have been appraising for forty some years. But is it impossible? No, it isn't. When you have the significant changes that were not available to us when we did the appraisal in 2017, but were available by June of 2018, it became evident that prudence said we needed to take a second look at it.

In its ruling, the court found RV Central's request that the court accept Vander Werff's first appraisal but discredit the second was "very tenuous" and found Vander Werff "extremely qualified to give his opinion." *See Hawk v. Council Bluffs Airport Auth.*, No. 05-0133, 2006 WL 1230010, at *6 (Iowa Ct. App. Apr. 26, 2006) ("Appraisal is not an exact science, but a subjective exercise of professional judgment by qualified and skilled individuals who may reasonably disagree."); *cf. Sears, Roebuck & Co. v. Sieren*, 484 N.W.2d 616, 617 (Iowa Ct. App. 1992) ("The heart of most assessment cases is the evidence of experts applying, at best, their professional judgments within a context of variables which can in no definite way be objectively conclusive."). The district court found Vander Werff's opinion to be credible. *See Bell v. Cmty. Ambulance Serv. Agency for N. Des Moines Cty.*, 579 N.W.2d 330, 338 (Iowa 1998) (noting we give trial courts broad discretion in

admitting expert testimony). We agree and conclude the district court's reliance on Vander Werff's second appraisal was appropriate.

**D. Appellate Attorney Fees and Costs.** Finally, Stanley requests an award of $7089.50 in appellate attorney fees and $395.67 in appellate costs. *See* Iowa Code § 490.1331(2)(b). Stanley argues that awarding appellate fees and costs is the only way to preserve the deterrent effect of section 490.1331.

We conclude an award of some of the appellate costs and fees is appropriate. Stanley submitted an itemization of attorney fees and costs. We limit the award to $3000 for Stanley's attorney fees and $395.67 in costs.

**IV. Disposition.**

For the above-stated reasons, we affirm the district court order and award Stanley appellate attorney fees of $3000 and costs of $395.67.

**AFFIRMED.**